**Dominick CARUSO, Petitioner,**

v.

**Mr. Donald ZELINSKY, Acting Superintendent, Youth Reception & Correction Center, Yardville, New Jersey; and John Degnan, Attorney General of the State of New Jersey, Respondents.**

**Civ. A. No. 79–3215.**

United States District Court,
D. New Jersey.

June 8, 1981.

As Amended July 20, 1981.

Greenberg, Margolis, Ziegler & Schwartz by Stephen N. Dratch, Roseland, N. J., for petitioner.

John J. Degnan, Atty. Gen. by Allan J. Nodes, Deputy Atty. Gen., Div. of Crim. Justice, Appellate Section, Princeton, N. J., for respondents.

## OPINION

STERN, District Judge.

In this petition pursuant to 28 U.S.C. § 2254 for a Writ of Habeas Corpus, petitioner Dominick Caruso contends that he was denied the effective assistance of counsel at four critical stages of the proceedings which culminated in his present incarceration.

## I. FACTS AND PROCEDURAL HISTORY

In the early morning of June 4, 1972, two white men drove through the City of Elizabeth, New Jersey, randomly threatening and shooting at black men who happened to be walking on the street. One person was killed and at least four others were wounded. Petitioner was charged by a Union County, New Jersey, grand jury with twenty-three crimes in connection with this incident: one count of murder, eight counts of assault with an offensive weapon, eight counts of assault and battery with intent to kill, one count of possession of a rifle with intent to use it unlawfully, and four counts of atrocious assault and battery. Petitioner's alleged accomplice, Michael DeSanto, was charged in two separate indictments with the same twenty-three crimes.

Pursuant to a plea agreement, DeSanto pleaded *non vult* to the murder charge and

guilty to all other charges. *See State v. DeSanto*, 157 N.J.Super. 452, 384 A.2d 1169 (Law Div. 1978). Under New Jersey law in effect at the time, a defendant who pleaded not guilty to murder and was convicted received a mandatory sentence of life imprisonment; a defendant who pleaded *non vult* could receive either a sentence of life imprisonment or a fixed term not to exceed thirty years.[1] As part of the plea agreement, the State recommended that DeSanto's sentence on the other counts run concurrent to that imposed on the murder count. The court followed this recommendation and sentenced DeSanto to an aggregate term of 25 to 30 years.

The parties dispute whether the prosecution made any efforts to negotiate a plea with petitioner, a dispute which figures prominently in this petition. Neither Caruso's local counsel, William Kaufmann, nor the Texas lawyer who tried his case, Percy Foreman, informed Caruso that the prosecution evinced any interest in a plea bargain, and Foreman denies that the prosecution gave any indication that it would consent to a plea. However, petitioner now contends, based on affidavits by two persons involved in the prosecution of his case, that a plea offer was in fact communicated to his lawyers.

In either event, Caruso pleaded not guilty to all counts. Trial commenced on November 27, 1972, and continued for about ten days. The evidence, which included a videotaped four-and-one-half hour confession, proved conclusively that petitioner had committed the acts charged against him. In fact, Foreman told the jury in his opening statement that petitioner would rely solely on an insanity defense.

The State introduced testimony that Caruso and his girlfriend attended an engagement party at a hotel in Elizabeth on June 3, 1972; that when Caruso attempted to park his car in a lot near the hotel he became engaged in an argument with the attendant, who was black; and that he left the party about two hours later to find a friend, Billy DeSanto. He was apparently heavily intoxicated the entire evening. The evidence showed that Caruso and DeSanto returned to the hotel shouting racial epithets, and attempted to assault the parking lot attendant with a tire iron and a jack stand. Both men were arrested and taken to Elizabeth Police Headquarters. Caruso was released after his parents posted bail, and he returned home at about 1:00 A.M. on June 4, 1972.

According to petitioner's confession, he then went to his bedroom and pretended to go to sleep. After his parents fell asleep, he took a .22 caliber rifle and ammunition belonging to his father and drove to a tavern in Elizabeth where he met Michael DeSanto, Billy DeSanto's younger brother. Caruso and DeSanto drove Caruso's car around a predominantly black neighborhood in Elizabeth, shooting at people on the street. They would sometimes approach a pedestrian, usually by calling out to him and asking for money. When the pedestrian approached the car, petitioner or DeSanto would point the rifle at him and shoot. Other victims were approached without warning and shot from the rear. Caruso and DeSanto shot at at least nine persons: one died, four were wounded, and four escaped unharmed.

In support of his insanity defense, petitioner called his uncle and a psychologist to testify about Caruso's behavior in the years prior to the incident, and a psychiatrist who testified that Caruso was psychotic at the time the acts occurred. The State also called a psychiatrist, Dr. David Flicker, who testified that petitioner was sane on the evening of the shootings, although he believed that petitioner's intoxication contributed to his actions.

On December 6, 1972, after less than six hours of deliberation, the jury returned its verdict of guilty on all counts. The trial judge, as required by law, immediately imposed the mandatory sentence of life im-

---

1.  See N.J.Stat.Ann. §§ 2A:113–3, 2A:113–4 (both repealed by L.1978, c.95, § 2C:98–2, eff. Sept. 1, 1979). The constitutionality of this provision for a lesser sentence for a plea of *non* *vult* has been upheld by the United States Supreme Court. *Corbitt v. New Jersey*, 439 U.S. 212, 99 S.Ct. 492, 58 L.Ed.2d 466 (1978).

prisonment on the murder count. On January 5, 1973, the court sentenced petitioner to an aggregate sentence of eight to twelve years on the other twenty-two counts, to run consecutively to the sentence of life imprisonment.

Petitioner's counsel filed a notice of appeal with the New Jersey Superior Court, Appellate Division.[2] Counsel did not move before the trial court for a reduction of sentence, nor was the severity of sentence one of the issues raised on appeal.[3] On February 22, 1974, the Appellate Division affirmed the conviction. A petition for certification, filed with the New Jersey Supreme Court, was denied on May 14, 1974.

On March 20, 1979, petitioner filed a petition in Superior Court pursuant to N.J. Court Rule 3:22–1 for post-conviction relief. He alleged that he was denied his Sixth Amendment right to the effective assistance of counsel in that: (1) trial counsel failed to communicate to petitioner a plea offer by the State;[4] (2) trial counsel failed to request the judge to charge the jury only on second-degree murder; (3) trial counsel failed to move the trial judge for a reduction of sentence; and (4) appellate counsel

failed to raise on appeal the issue of the severity of petitioner's sentence. The trial judge heard argument on the petition on May 11, 1979, and denied it from the bench.

On July 3, 1979, a notice of appeal was filed with the Appellate Division. The instant petition, raising arguments identical to those raised in the state petition, was filed on November 2, 1979. Because appeal from denial of the state petition was pending, this petition was dismissed without prejudice for failure to exhaust state remedies. 28 U.S.C. § 2254(b). Subsequently, the Appellate Division rejected petitioner's appeal,[5] the Supreme Court of New Jersey denied certification, and this matter was reopened. Oral argument was heard on February 23, 1981.

## II. ASSISTANCE OF COUNSEL PRIOR TO TRIAL—FAILURE TO COMMUNICATE PLEA OFFER

A. *Counsel's Obligation to Inform the Defendant of any Plea Offer or Negotiations:*

The standard of representation required in this circuit to satisfy the Sixth

---

**2.** Petitioner was represented on appeal by the New Jersey firm of Forman, Forman & Cardonsky. The principals of that firm are not related to petitioner's trial counsel, Percy Foreman.

**3.** New Jersey is one of the few states which permit a defendant to raise on direct appeal the severity of the trial court's sentence. *See* N.J. Court Rule 2:10–3.

**4.** As relief on this ground petitioner seeks enforcement of the State's plea offer. Tr. of Feb. 23, 1981, at 29.

**5.** The Appellate Division held that Caruso's petition for post-conviction relief was procedurally barred by N.J. Court Rule 3:22–12, which precludes the filing of a post-conviction relief petition more than five years after rendition of the judgment or sentence unless excusable neglect for the delay is shown. That court alternatively held that the trial court properly rejected the petition on the merits.

Respondent now asserts that petitioner's procedural default in state court bars this Court's consideration of the merits of the petition. *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); *Francis v. Henderson,* 425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d 149 (1976). The petition for post-conviction relief was filed over six years after Caruso was sen-

tenced, although less than five years after his state court appeals had been exhausted. Respondent did not initially suggest, and the trial court did not consider, that petitioner was time-barred from submitting his claims. The Appellate Division, without granting petitioner the opportunity to establish excusable neglect, held the petition to be time-barred but also considered the petition on the merits. Because the state courts clearly reached the merits of his petition, the Court does not find a procedural default on the part of petitioner.

Even if petitioner's claims had been procedurally barred by the state courts, petitioner has demonstrated cause and prejudice for the default within the meaning of *Wainwright v. Sykes, supra.* His claims are addressed to the ineffective assistance of both trial and appellate counsel, counsel which represented petitioner during the actionable period. In view of the allegation that counsel, contrary to his affidavit, withheld information which should have been communicated to petitioner, petitioner would, if this allegation is proved, demonstrate good cause for delay. In other words, the record does not indicate any reason that petitioner should have known earlier of the facts supporting his claim.

and Fourteenth Amendment guarantees of effective assistance of counsel is "the exercise of the customary skill and knowledge which normally prevails at the time and place." *Moore v. United States*, 432 F.2d 730, 736 (3rd Cir. 1970). This standard requires petitioner to establish that counsel acted in derogation of the customary responsibility imposed upon him, and that petitioner was prejudiced by counsel's action. Petitioner alleges that representatives of the state explored the interest of defense counsel in a plea bargain, and in fact offered defense counsel a plea carrying a maximum sentence of life imprisonment and the possibility of a term of thirty years or less. If petitioner proves this allegation, he will have met both prongs of that test.

The obligation of counsel to permit the client to make final determinations concerning a plea, and consequently to inform the client fully on the available alternatives, is set forth in the various codes of conduct with which all attorneys are expected to comply. The Code of Professional Responsibility states:

> A defense lawyer in a criminal case has the duty to advise his client fully on whether a particular plea to a charge appears to be desirable and as to the prospect of success on appeal, but it is for the client to decide what plea should be entered and whether an appeal should be taken.

Ethical Consideration EC7–7. The obligation is more clearly set forth in the ABA Standards for Criminal Justice (2nd Ed. 1980). Standard 4–6.2, relating to the "defense function," provides:

> (a) In conducting discussions with the prosecutor the lawyer should keep the accused advised of developments at all times and all proposals made by the prosecutor should be communicated promptly to the accused.

The Commentary to this standard explains:

> Because plea discussions are usually held without the accused being present, the lawyer has the duty to communicate fully to the client the substance of the discussions. It is important that the accused be informed of proposals made by

the prosecutor; the accused, not the lawyer, has the right to decide on prosecution proposals, even when a proposal is one that the lawyer would not approve. If the accused's choice on the question of a guilty plea is to be an informed one, the accused must act with full awareness of the alternatives, including any that arise from proposals made by the prosecutor.

If it is true, as petitioner alleges, that the prosecution offered to permit him to plead *non vult* to murder, petitioner was clearly prejudiced by his lawyer's failure to communicate the offer to him. Caruso went to trial on a first-degree murder charge, the penalty for which was *mandatory* life imprisonment. He also faced lengthy consecutive terms if convicted on any of the twenty-two other counts. In contrast, the maximum sentence he could have received for a plea of *non vult* to murder was life imprisonment, and he may have received a lesser sentence. As part of the bargain, the State allegedly would have recommended that sentences on the other counts run concurrent to that on the murder count. After making the same deal, Michael DeSanto was sentenced to a thirty-year maximum. The prejudice to petitioner is even clearer when the weight of the evidence against him is considered, particularly in view of the paucity of evidence that petitioner was insane at the time the acts were committed.

If the alleged plea offer was in fact made to Caruso's counsel and not communicated to Caruso, petitioner was denied his Sixth and Fourteenth Amendment rights to the effective assistance of counsel.

B. *Summary of the Evidence and Findings:*

In support of his state court petition, Caruso submitted six affidavits. The affidavits of petitioner, his father Louis Caruso, and his uncle Augustine Caruso, all of whom were present at trial and communicated extensively with Mr. Kaufmann and Mr. Foreman, state that they were never advised of any plea offer. The State did not, and has not, introduced any evidence contradicting these affidavits.

The other three affidavits are by attorneys—Mr. Foreman; Stanley Kaczorowski, the assistant prosecutor who tried the case; and Karl Asch, who at the time of trial was prosecutor of Union County and Kaczorowski's superior. Kaczorowski's affidavit states:

I have been requested by the defense attorneys for Dominick Caruso to recall whether there were any plea bargains or plea offers given by the State to the defense in the within prosecution.

3. The defense attorneys ... have referred me to pages 903, 904, 905 and 906 of the trial transcript. On page 904 the following statement is made by me:

"... I told Mr. Kaufmann—and then I might state, your Honor, it turned out that Mr. Foreman was also present in Mr. Kaufmann's office at that time, and Mr. Kaufmann then gave the phone to Mr. Foreman. And I spoke to Mr. Foreman on November 21st and I reiterated all that I told you that I told Mr. Kaufmann. And I then asked Mr. Foreman was he willing to have the defendant cooperate with the State. And I was talking about a possible plea with—at that particular point with Mr. Caruso turning State's evidence against the defendant DeSanto. And he said no he couldn't or wouldn't do that, your Honor. That was on Tuesday...."

On page 906 Mr. Foreman admits to my statement.

4. To the best of my recollection in all of my discussions with either Mr. Kaufmann or Mr. Foreman, I was advised that they were not interested in discussing a plea bargain because they were going to trial on the insanity defense. I do not recall of any specific plea bargain being offered by me to the defense and only recall what is contained in this affidavit....

6. Respondent contends, based on Kaczorowski's affidavit, that even if a plea offer was made petitioner is now estopped from contending that counsel never communicated the offer to him. It argues that petitioner was in the courtroom when Kaczorowski's reference to a plea offer was made and could at that time have asked to withdraw his not guilty plea. To

It is useful to describe the context in which the statement on page 904 of the trial transcript was made. At the beginning of the defense case, Mr. Foreman indicated his intention to call Kaczorowski as a witness to testify that a complaint had been filed against Michael DeSanto prior to the start of Caruso's trial and that DeSanto had confessed to the murder for which Caruso was charged. Presumably, Foreman believed that this information was exculpatory. Kaczorowski objected to being called as a witness and to the relevancy of a criminal complaint filed against DeSanto. The court sustained the objection but required the State to represent that it had turned over all exculpatory information in its possession to the defense. Kaczorowski made a lengthy statement summarizing his conversations with defense counsel with respect to the communication of relevant material, which included the excerpted summary of a conversation concerning a plea offer. The admission by Mr. Foreman on page 906 to which Kaczorowski cites, when read in context, does not refer to comments regarding plea negotiation, but rather concedes that the State had made efforts to turn over exculpatory information.[6]

Mr. Asch states in his affidavit:

I further recall having discussions with William Kaufmann, Esq., New Jersey attorney for Dominick Caruso. In those discussions I advised him that the State would be willing to recommend that any sentence received by Dominick Caruso upon any of the other crimes be concurrent with the sentence imposed for the first degree murder plea. This plea offer was never accepted by the defense. William Kaufmann indicated to me that he felt that the plea bargain should be accepted. However, the plea bargain was not accepted and thereafter I learned that the defense would be one of insanity.

accept this contention would ignore the context in which Kaczorowski's statement was made and impose a terribly onerous burden on a lay defendant, without advice of counsel, to follow and understand the proceedings. To impose such an obligation would emasculate the constitutional guarantee of right to counsel. Thus, the Court rejects respondent's argument.

Foreman's affidavit stated simply: "At no time during or prior to the trial was there any offer of plea bargaining by anyone connected with the prosecution of this case."[7] Mr. Kaufmann died shortly after trial, and no other corroboration exists for his conversations with the prosecution or Mr. Foreman.

On the basis of these affidavits,[8] the trial court concluded:

> What counsel seeks to do this morning is to say that the Prosecutor, namely Mr. Asch, possibly Mr. Kaczorowski, spoke with Mr. Kaufman[n] and indicated to him that there were some ground [sic] upon which some plea bargain might be struck.
>
> Mr. Kaufman[n] is no longer with us. He is deceased. And Mr. Kaczorowski does not say, whatever the bargain was, that he was and would have been and would be and still is ready, willing and able to accept same, if in fact one was clearly offered. . . .
>
> I believe a statement was made by counsel for Mr. Caruso that we are looking at this matter some years later, and that is true, Mr. Dratch. But having presided over this matter in 1972, almost seven years ago, it seems like this tragic scene is repeated, when you first introduced the entire family of Mr. Caruso, who is seated in this courtroom. Because almost the same people were seated in this courtroom, particularly the mother and the father and the uncle, day in and day out throughout this entire tragic trial, and the atmosphere at that time—and it may even prevail today. I don't know. I can't enter the minds of these people— was that Mr. Caruso was insane. They were looking for a not guilty verdict by reason of insanity. That was the clear atmosphere then. They were not interested, no question about it, in any plea bargaining.

> Interesting to note, there were no negotiations with Mr. For[e]man. Mr. For[e]man didn't say that there were plea bargains offered to him and not communicated. There was some talk perhaps with Mr. Kaufmann. But Mr. Kaczorowski clearly states that they were not interested in any plea bargain negotiations. They went to Texas to get Mr. Percy For[e]man. Mr. Augustino Caruso practically lived with this man, chauffering him back and forth to New York. I have a clear recollection of this case, one of the most tragic cases I ever presided at.
>
> This is a nebulous argument, with all due respect to counsel, as to what was said, what would have been done and what would have occurred. The applicant here today must establish by a fair preponderance of the credible evidence in order to gain relief this morning. There is a naked assertion with little meaning as to what was said or what the results would have been, whether this court would have accepted it in the last analysis. . . .
>
> The motion is denied, sir.

Tr. of May 11, 1979, at 16–18.

C. *Effect of the State Court Findings:*

■ The finding by the state court that petitioner had not presented sufficient evidence to establish that a plea offer was made by the prosecution to defense counsel is binding on this Court unless it is not fairly supported by the record. 28 U.S.C. § 2254(d)(8). An analysis of the court's decision, however, with respect to both evidence which was and was not considered, shows that the decision is not supported by the record.

The affidavits contained two pieces of evidence strongly favorable to petitioner. First, Asch states that he made a specific plea offer to Kaufmann. Second, Kaczo-

---

7. This statement corroborates the statements by the Carusos that they were never advised of a plea offer.

8. Although petitioner's petition for post-conviction relief requested an evidentiary hearing, he did not pursue the request at oral argument, and was content to permit the trial court to decide the petition solely on the basis of the affidavits.

rowski states—quoting from an excerpt of the trial record—that he investigated the interest of Mr. Foreman in a plea agreement. Neither piece of evidence was satisfactorily addressed by the state court.

With respect to Asch's statement, the court states only: "Mr. Kaufman[n] is no longer with us. He is deceased." The death of Mr. Kaufmann, who like Mr. Foreman was retained by Caruso to represent him in this case, does not lessen petitioner's right to the effective assistance of counsel or his ability to pursue his claim based on infringement of that right.

The findings relating to the Kaczorowski affidavit are even more confusing. Kaczorowski states in his affidavit:

> "I then asked Mr. Foreman was he willing to have the defendant co-operate with the State. And I was talking about a possible plea.... And he said no he couldn't or wouldn't do that...." [Quoting from trial transcript.]
>
> To the best of my recollection in all of my discussions with either Mr. Kaufmann or Mr. Foreman, I was advised that they were not interested in discussing a plea bargain because they were going to trial on the insanity defense. I do not recall of any specific plea bargain being offered by me to the defense....

The court dismissed this allegation because: (1) Kaczorowski did not state that he made a specific plea offer; (2) Kaczorowski stated that "they," which the court interpreted to refer to the prosecutors, "were not interested in discussing a plea bargain;" and (3) Mr. Foreman denied that any plea offer was made. This reasoning is unsupported by the record.

First, the fact that no specific plea offer was made by the State would not alter counsel's obligation to inform petitioner of his alternatives. Petitioner and counsel could not fully explore those alternatives if counsel did not make efforts to understand the possible offer which the prosecutor might make, or at least to question his client as to what kind of offer he would or should accept. Obviously, once a prosecutor is told that the defense has no interest in a

plea, it is unlikely that further efforts to negotiate will be forthcoming. Second, the court clearly misinterpreted Kaczorowski's phrase, "*they* were not interested in discussing a plea bargain." The "they" in that phrase, if the phrase is read in context, unambiguously refers to Mr. Kaufmann and Mr. Foreman. Thus, the statement supports petitioner's, rather than the State's, position. Third, the court found: "Interesting to note, there were no negotiations with Mr. For[e]man." This finding apparently credits the statement by Mr. Foreman that no offer of plea bargaining was ever made and rejects the statement by Mr. Kaczorowski that overtures were indeed made to Mr. Foreman. It is the province of the trial judge to resolve issues of credibility. Such resolution, however, cannot be made on the basis of a naked affidavit, without the benefit of a hearing which includes direct and cross-examination. The ex parte affidavit of Foreman denying an offer is no more persuasive than the ex parte affidavits of Kaczorowski and Asch, which swear that an offer was made. Further, such a finding cannot be made without an explanation as to why certain statements are credited and others not. This is particularly true in a case, like this one, where the statement of Foreman that was credited is no more than a general denial and the statements by Asch and Kaczorowski which were rejected are a specific recitation of corroborated facts contrary to the general denial.

A fair reading of the affidavits is that Mr. Asch made a specific offer to Mr. Kaufmann, contemplating that Caruso would co-operate with the State in its prosecution of DeSanto in return for a plea to a lesser charge; that Mr. Kaczorowski later made a more general statement with the same purpose to Mr. Foreman; and that defense counsel rejected all plea bargaining overtures with the idea that they would proceed on an insanity defense which offered the prospect of a complete acquittal. The prosecution then issued a criminal complaint against DeSanto, who later agreed to cooperate by testifying against Caruso. DeSanto's plea resulted in his receiving a lower

sentence even though his testimony against Caruso was never used.

A hearing may bring out facts to the contrary. Perhaps Caruso made clear when he retained Foreman that he had no interest in anything less than acquittal. The fact that the state court sensed a feeling by Caruso's family at trial that they were interested in an insanity defense, however, is not conclusive on this issue. The family, and Caruso, may have been unaware of the alternatives to proceeding to trial on twenty-three counts, including first-degree murder.

Thus, the Court holds that the state court finding that no plea bargain was ever offered to petitioner is not supported by the record.

The relief which petitioner seeks is not the vacation of his conviction, nor does he seek immediate release from custody. All that he asks is the benefit of the plea bargain allegedly offered to his counsel but not communicated to him. He seeks a resentencing, under which he would receive a maximun sentence of life imprisonment, rather than the life plus eight to twelve year sentence which he is now serving. Unless the State is willing to accede to resentencing, it must afford him an evidentiary hearing which fully explores his claim to have been denied the opportunity to plead, pretrial, because of the ineffective assistance of counsel.

## III. ASSISTANCE OF COUNSEL AT TRIAL—JURY INSTRUCTIONS

■ Petitioner contends that he was denied the effective assistance of counsel at trial because counsel failed to require the court to permit the case to go to the jury on the charge of second-degree murder. Petitioner contends that the evidence demonstrated that petitioner lacked the requisite specific intent for first-degree murder because of his intoxication. In effect, petitioner contends that the court should have entered a judgment of acquittal on the first-degree murder count. The trial judge, in accordance with New Jersey law, see *State v. Maik*, 60 N.J. 203, 287 A.2d 715

(1972), charged the jury that intoxication is not a defense to first-degree murder, but that it "is a factor the jury should consider in determining" whether petitioner's actions were premeditated and deliberate. He further charged the jury that voluntary intoxication cannot relieve a defendant of responsibility for second-degree murder. III. Tr. 1081–82.

Petitioner now contends that the evidence did not support a verdict of first-degree murder. He relies on the testimony of several witnesses that petitioner was intoxicated at the time the acts occurred, and on the following testimony of the State's expert witness, Dr. Flicker:

> I feel that that night an individual who was usually a reasonably adjusted individual got too mad, drank too much, and behaved in a completely unreasonable and illogical manner, and that was decompensation. It was behavior that was foreign to him even to that extent. And I feel that it was due to the intensity of the emotion and the lowering of the inhibitions by this alcohol that he decompensated and no longer acted the way he was supposed to act, the way we are supposed to act.

III. Tr. 970. The Court finds that the state court did not err in presenting the case to the jury on both theories. Dr. Flicker's testimony would have supported a verdict of either first or second-degree murder. Thus, the failure of petitioner's counsel to move for a judgment of acquittal on this ground does not constitute the ineffective assistance of counsel.

## IV. ASSISTANCE OF COUNSEL AFTER TRIAL—FAILURE TO MOVE FOR REDUCTION OF SENTENCE OR TO APPEAL THE SENTENCE

Finally, petitioner contends that he was denied the effective assistance of counsel because his trial counsel failed to move for reduction of sentence and his appellate counsel failed to appeal the severity of his sentence.

The failure to raise the severity of petitioner's sentence on appeal does not constitute the ineffective assistance of counsel. Matters of appellate strategy, like matters of trial strategy, are generally relegated to the discretion of counsel. *See Faretta v. California*, 422 U.S. 806, 820, 95 S.Ct. 2525, 2533, 45 L.Ed.2d 562 (1975); *United States v. Williams*, 631 F.2d 198, 207 (3rd Cir. 1980) (dissenting opinion). Petitioner's appellate counsel raised five points on appeal—four related to the jury charge and the fifth to an evidentiary matter. Counsel did not challenge the severity of the sentence. Counsel may reasonably choose to concentrate on those issues most likely to be successful, and to ignore the issues which may have a remote chance of success but which may distract the appellate court from the stronger arguments. The scope of review of a sentence on appeal is extremely narrow, limited to the correction of sentences which are "manifestly excessive." *State v. Leggeadrini*, 75 N.J. 150, 380 A.2d 1112 (1977). Given the statutory requirement of life imprisonment for murder, the relative modesty of the consecutive sentence compared to the sentence the court could have imposed, and the tremendous discretion vested in the sentencing judge, counsel could reasonably assume that petitioner's chance of having the sentence overturned on appeal was virtually nonexistent.

The failure of counsel to move the trial court for a reduction of sentence presents a different issue. Like the presentation of the sentencing issue to the Appellate Division, the motion to reduce was likely to be unsuccessful. Unlike the appellate issue, however, in which sound strategy may dictate limitation of the grounds for appeal, no strategic advantage was gained by failing to ask the trial court to reduce petitioner's sentence. In *United States v. Ackerman*, 619 F.2d 285, 287–88 (3rd Cir. 1980), the Court of Appeals held that the failure of counsel to move under Rule 35, Federal Rules of Criminal Procedure, for reduction of sentence after counsel had promised in writing to do so would constitute a breach of the defendant's Sixth Amendment rights. The court remanded for an evidentiary hearing to consider whether defendant's allegations that his counsel breached a promise was true. The holding implies that the failure to file a motion to reduce does not in itself constitute the ineffective assistance of counsel.

The Court, therefore, does not hold that counsel's failure to move for reduction of sentence constitutes a *per se* denial of constitutional rights. It cannot order the state court to consider such a motion.

## V.  CONCLUSION

For the foregoing reasons, a Writ of Habeas Corpus shall issue unless the state court within ninety days (1) affords petitioner an evidentiary hearing and makes findings, fairly supported by the record, contrary to petitioner's allegations, or (2) grants petitioner's request for the benefit of the proffered plea bargain.