689 F.2d 435
 UNITED STATES ex rel. Dominick CARUSO, Appellee-Cross-Appellant,
v.
Donald ZELINSKY, Acting Superintendent, Youth Reception and
Correction Center, Yardville, New Jersey, and John
Degnan, Attorney General of New Jersey,
Appellants-Cross-Appellees.
 Nos. 81-2395, 81-2484.
 United States Court of Appeals,
Third Circuit.
 Argued July 6, 1982.
Decided Sept. 22, 1982.
 
 Irwin I. Kimmelman, Atty. Gen. of New Jersey, Allan J. Nodes (argued), Deputy Atty. Gen., Div. of Crim. Justice, Trenton, N. J., for Zelinsky and Degnan.
 Martin L. Greenberg (argued), Stephen N. Dratch, Richard E. Mischel, Greenberg, Margolis, Ziegler & Schwartz, P.A., Roseland, N. J., for Caruso.
 Before SEITZ, Chief Judge, VAN DUSEN and SLOVITER, Circuit Judges.
 OPINION OF THE COURT
 SEITZ, Chief Judge.
 
 
 1
 The State of New Jersey appeals from the district court's order conditionally granting Dominick Caruso a writ of habeas corpus. This court has jurisdiction under 28 U.S.C. § 1291 (1976).
 
 
 2
 * On June 4, 1972, Caruso and Michael DeSanto ran amok in Elizabeth, New Jersey, indiscriminately threatening and shooting black men whom they came across. Both men were indicted and charged with twenty-three crimes relating to their June 4 activities, including one count of murder, eight counts of assault and battery with intent to kill, and four counts of atrocious assault and battery. Pursuant to a plea bargain, DeSanto pleaded non vult to the murder count and guilty to the other counts. In return, the State recommended that sentences on all counts run concurrently, a recommendation that the sentencing court followed. He was sentenced to a term of 25-30 years.
 
 
 3
 Caruso pleaded not guilty to all counts, and relied on an insanity defense at trial, at which he was represented by New Jersey attorney William Kaufman and Texas attorney Percy Foreman. After about a two-week trial, the jury returned a verdict of guilty on all counts. Under New Jersey law at that time, the trial court was required to impose a sentence of life imprisonment on a defendant found guilty of murder after a plea of not guilty. The trial court on January 5, 1973, duly imposed the mandatory life sentence, and in addition sentenced Caruso to a total of eight to twelve years on the other counts, to run consecutively to the life sentence.
 
 
 4
 After sentencing, Caruso obtained new counsel, the New Jersey law firm of Forman, Forman & Cardonsky, and then appealed to the Appellate Division of the New Jersey Superior Court, which affirmed the conviction. The New Jersey Supreme Court denied Caruso's petition for certification. Caruso, represented by still different counsel, then returned to the state trial court and moved for a new trial, claiming that Foreman's trial preparation was inadequate. That motion was denied. On appeal that decision was affirmed by the Appellate Division.
 
 
 5
 On March 15, 1979, more than five years after sentence was imposed, Caruso, represented by his present counsel, filed a petition for post-conviction relief in the Superior Court of New Jersey. In particular, Caruso alleged ineffective assistance of counsel in the failure: (1) of trial counsel to tell Caruso that the State had offered him a plea bargain; (2) of trial counsel to request the trial court not to charge the jury on first-degree murder; (3) of trial counsel to move the trial court for a reduction of sentence; and (4) of appellate counsel to raise as an issue on appeal the severity of Caruso's sentence. Caruso submitted six affidavits in support of his petition. The State submitted none in opposition.
 
 
 6
 Without holding an evidentiary hearing, the same trial judge who had presided at Caruso's trial denied the petition, apparently holding that Caruso had not presented sufficient evidence that a plea offer had been made. The trial judge also rejected Caruso's other three claims. The Appellate Division affirmed the trial court's decision, both on the merits and for failure to comply with various state procedural rules. The New Jersey Supreme Court denied Caruso's petition for certification.
 
 
 7
 Caruso then filed in the district court a petition for a writ of habeas corpus under 28 U.S.C. § 2254 (1976), raising the same four arguments advanced in the state court. See Caruso v. Zelinsky, 515 F.Supp. 676, 679 (D.N.J. 1981). The district court held that the finding of the state trial court that no plea bargain was ever offered was not fairly supported by the record, see 28 U.S.C. § 2254(d)(8), and therefore could not be presumed to be correct. The district court then concluded that the merits of the plea bargain claim could not be decided solely on the basis of the submitted affidavits and the state trial transcript, and that the state court should have had a hearing. 515 F.Supp. at 683.
 
 
 8
 Without holding an evidentiary hearing of its own, the district court proceeded to order that a writ of habeas corpus issue "unless the state court within ninety days (1) affords (Caruso) an evidentiary hearing and makes findings, fairly supported by the record, contrary to (Caruso's) allegations, or (2) grants (Caruso's) request for the benefit of the proffered plea bargain." Id. at 685. In a separate order, the district court held that the other grounds advanced by the petitioner did not constitute ineffective assistance of counsel and therefore would not support the issuance of the writ. The State appeals from the order conditionally granting the writ on the first ground (No. 81-2395). Caruso appeals from the order denying the writ on the other grounds (No. 81-2484).
 
 II
 
 9
 The federal courts have jurisdiction over a state prisoner's claim for habeas corpus relief only if "he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Preliminarily, we are satisfied that a Sixth Amendment right to effective assistance of counsel is a claim cognizable under the federal habeas corpus statute. Sallie v. State of North Carolina, 587 F.2d 636, 640-41 (4th Cir. 1978), cert. denied, 441 U.S. 911, 99 S.Ct. 2009, 60 L.Ed.2d 383 (1979).
 
 
 10
 We proceed to consider whether Caruso's petition presents sufficiently substantial federal constitutional claims.[1] For the reasons that follow, we conclude that his trial counsel's alleged failure to advise him of a plea bargain offer presents a substantial constitutional claim.
 
 
 11
 Caruso's petition before the district court restates the claim he made before the state court and alleges that he was denied:
 
 
 12
 due process of law and the effective assistance of counsel (in that) the then Union County Prosecutor, Karl Asch, offered to (Caruso's) then trial counsel, William Kaufman of Elizabeth, New Jersey and Percy Foreman of Houston, Texas, a plea bargain (-) that in exchange for a guilty plea to the first count of murder in the first degree all other charges ... would be dropped. This plea offer was never communicated to (Caruso) for his consideration and had it been communicated, would have been accepted and would have resulted in a much reduced sentence....
 
 
 13
 Under New Jersey law at the time, a defendant who pled guilty to murder could be sentenced to less than life imprisonment. Because Caruso pled not guilty and was convicted of murder, he received the mandatory life sentence. He also received a sentence of eight to twelve years on the other counts to run consecutively with the life sentence. Thus, if his allegations are true, he might well be serving a significantly lesser sentence but for the failure to communicate the plea bargain.[2]
 
 
 14
 In general, the right to counsel attaches during "critical stages" of the criminal process. See United States ex rel. O'Brien v. Maroney, 423 F.2d 865, 868 (3d Cir. 1970). We have held that entering a guilty plea to an indictment, without the benefit of counsel, is a critical stage, and that,
 
 
 15
 the guidance of counsel is so essential a protection for an accused during plea bargaining and in the making of a decision to plead guilty that a plea entered without such guidance must be set aside....
 
 
 16
 Gallarelli v. United States, 441 F.2d 1402, 1405 (3d Cir. 1971) (footnote omitted). Accord, Colson v. Smith, 438 F.2d 1075, 1078 (5th Cir. 1971) ("defendant is entitled to the effective assistance of counsel in determining how to plead"). It seems to us that the decision to reject a plea bargain offer and plead not guilty is also a vitally important decision and a critical stage at which the right to effective assistance of counsel attaches.
 
 
 17
 This court has held that "the standard of adequacy of legal services ... is the exercise of the customary skill and knowledge which normally prevails at the time and place." Moore v. United States, 432 F.2d 730, 736 (3d Cir. 1970) (in banc). The decision to reject a plea bargain offer and plead not guilty is a decision for the accused to make. It would seem that, in the ordinary case, a failure of counsel to advise his client of a plea bargain would constitute a gross deviation from accepted professional standards. The district court, in a thoughtful discussion, held that failure to communicate a plea bargain offer would deny Caruso his sixth and fourteenth amendment rights. 515 F.Supp. at 679-80. We agree.
 
 
 18
 This court has also held that the accused must be prejudiced by counsel's incompetence before relief will be granted. See United States ex. rel. Johnson v. Johnson, 531 F.2d 169, 177-78 (3d Cir.), cert. denied, 425 U.S. 997, 96 S.Ct. 2214, 48 L.Ed.2d 823 (1976). Caruso alleges the requisite prejudice, a significant additional term of imprisonment that resulted from counsel's failure to communicate the plea offer which he would have accepted.
 
 
 19
 The State argues that because Caruso received a fair trial he is not entitled to a habeas remedy even if he could prove ineffective assistance of counsel in the manner alleged. This argument is untenable on the plea bargaining issue. Failure by defense counsel to communicate a plea offer to defendant deprives defendant of the opportunity to present a plea bargain for the consideration of the state judge and, on acceptance by the state judge, to enter a guilty plea in exchange for a lesser sentence. A subsequent fair trial does not remedy this deprivation. Cf. Rose v. Mitchell, 443 U.S. 545, 557-64, 99 S.Ct. 2993, 3000-04, 61 L.Ed.2d 739 (1979).
 
 
 20
 We therefore conclude that Caruso's petition presented a sufficiently substantial federal constitutional issue to require the district court to confront other preconditions to its consideration of the merits of the petition.
 
 
 21
 Section 2254 requires a state prisoner to meet certain procedural prerequisites before his petition may be entertained in the federal district court. The prisoner must exhaust available state remedies. 28 U.S.C. § 2254(b) & (c). Even if the exhaustion requirement is met, the prisoner must have complied with reasonable state procedural requirements or his federal constitutional claims cannot be considered. The prisoner has the burden of showing that he has met these procedural requirements. See Santana v. Fenton, 685 F.2d 71 at 73, (3d Cir. 1982); Brown v. Cuyler, 669 F.2d 155, 158 (3d Cir. 1982) (per curiam).
 
 
 22
 The district court held that Caruso had exhausted his state remedy with respect to the plea bargain issue. We agree. The claim was squarely presented to the state courts, albeit in untimely fashion.
 
 
 23
 The district court also held that Caruso had not forfeited his claim in the federal court by failing to seek relief within five years of his conviction, as required by the state procedural rule. We turn to that important issue.
 
 A. Procedural Default
 1.
 
 24
 The question of whether Caruso is barred from raising these claims by a procedural default in the state courts is difficult. The state trial court denied Caruso's claims on the merits. The Appellate Division affirmed the denial in a brief opinion, but adopted an additional rationale.
 
 
 25
 Our review of the record persuades us that the petition for post-conviction relief was properly denied both on procedural and substantive grounds. First, (N.J.) R. 3:22-12 precludes the filing of a post-conviction relief petition more than five years after the conviction unless either illegality of sentence is urged or the petition "alleges facts showing that the delay beyond said time was due to defendant's excusable neglect." Neither of these exceptional circumstances is applicable here, and we moreover perceive no arguable basis for excusable neglect in this record. We are further satisfied that the petition is barred by (N.J.) R. 3:22-4 and 3:22-5 in view of the direct appeal, the appealed denial of the new trial motion and the dismissal of the federal matters.[3]
 
 
 26
 Despite the procedural bars to the bringing of this petition, we have nevertheless elected to consider this appeal on the merits and we are satisfied that each of the substantive issues raised is clearly without merit. (N.J.) R. 2:11-3(e)(2) (Appellate Division may affirm on issue or issues that are clearly without merit by citing this rule).
 
 
 27
 The district court held that Caruso had not procedurally defaulted, "(b) ecause the state courts clearly reached the merits of (Caruso's) petition." 515 F.Supp. at 679 n. 5. The State argues that the district court erred in this holding, because it ignores the Appellate Division's procedural grounds for decision. Thus, we must decide whether a habeas petitioner has procedurally defaulted when state court relief is denied on alternate grounds, one of which would constitute a procedural default, but the other would not.
 
 
 28
 Exactly what constitutes a state procedural default has been the subject of much controversy. See, e.g., County Court of Ulster County v. Allen, 442 U.S. 140, 148-54, 99 S.Ct. 2213, 2220-23, 60 L.Ed.2d 777 (1979). Few cases, however, have addressed the question whether express reliance on a procedural bar is undone as a procedural default when the state court also addresses the merits.[4]
 
 
 29
 There are several ways that we could resolve this issue. First, we could hold that there was a procedural default, and treat the state court's decision on the merits as dictum, and decline to decide the merits of the habeas petition. See Dietz v. Solem, 640 F.2d 126, 131-32 n. 1 (8th Cir. 1981). Second, we could find no procedural default unless the failure to comply with a state procedural rule "was a substantial basis of the state court's denial of petitioner's claim." Hockenbury v. Sowders, 620 F.2d 111, 115 (6th Cir. 1980), cert. denied, 450 U.S. 933, 101 S.Ct. 1395, 67 L.Ed.2d 367 (1981). Third, we could defer to the state procedural rule only when the state court exclusively relies on the procedural bar. See Thompson v. Estelle, 642 F.2d 996, 998 (5th Cir. 1981). Because we believe that the policies that justify deference to a valid state procedural rule at all are equally applicable whenever the state court actually relies on a procedural bar, we conclude that state court reliance on a procedural rule as an alternate holding suffices to implicate the procedural default doctrine.
 
 
 30
 We note first that an alternate holding has the same force as a single holding; it is binding precedent. See R. Aldisert, The Judicial Process 800 (1976) (quoting R. Cross, Precedent in English Law 35-40 (2d ed. 1968)). A New Jersey trial court would be bound to follow the Appellate Division's holding that Rule 3:22-12 applies to cases brought more than five years after conviction.
 
 
 31
 The state interests that justify adoption and enforcement of procedural rules are present whether or not a holding based on a procedural rule is followed by a discussion of the merits of the case. For example, the five-year limit of Rule 3:22-12 is designed to put an end to litigation before evidence becomes stale or lost.
 
 
 32
 There may be occasions when the state courts believe that the interests of justice are better served by denying the prisoner's arguments for both procedural and substantive reasons. Cf. Ramirez v. Jones, 638 F.2d 712 at 718, (2d Cir. 1982) (Leval, D.J., concurring) (state court may reach the merits to give guidance on a difficult issue that is unsettled). Typically, decisions on procedural grounds are not as satisfying as decisions on the merits, and it is understandable that a court would want to show that it does not think its reliance on a procedural rule is causing any great injustice. In view of these considerations, we do not think it is proper for a federal court to appear to influence the form of a state court determination by choosing not to follow a state procedural ruling if the state court also expresses its views on federal constitutional law. Cf. Martinez v. Harris, 675 F.2d 51, 54-55 (2d Cir. 1982) (noting that it is sound appellate practice for a state prosecutor to argue in the alternative).
 
 
 33
 Finally, where it is unclear whether the state courts have applied the procedural default rule, the Supreme Court has nevertheless searched for procedural defects. See Ulster County, 442 U.S. at 148-54, 99 S.Ct. at 2220-23. It is implicit in the Ulster County decision that the Court would have respected a procedural default, had it found one, even if the default had not been clear from any state court opinion. We think there is at least as much justification for respecting a procedural default ruling when there are alternate holdings as when there is no clear holding.
 
 
 34
 Although Caruso does not rely on it, we are constrained to acknowledge that there is language in Wainwright v. Sykes, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), that supports Caruso's view. In Wainwright, the Court stated that:
 
 
 35
 The area of controversy which has developed (about state procedural bars) has concerned the reviewability of federal claims which the state court has declined to pass on because not presented in the manner prescribed by its procedural rules....
 
 
 36
 (W)e deal only with contentions of federal law which were not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure.
 
 
 37
 Id. at 81-82, 87, 97 S.Ct. at 2503-04, 2506 (emphasis deleted). The quoted language could certainly be interpreted as restricting the procedural default rule to those cases in which the procedural bar resulted in the state court not indicating its view of the merits of the constitutional claim. On the other hand, the Wainwright Court's attention was not focused on the issue before this court now, and we must be circumspect in attributing decisive weight to language employed in a significantly different factual context.
 
 
 38
 We hold that Caruso's failure to comply with Rule 3:22-12 was a procedural default.
 
 2.
 
 39
 Caruso's procedural default, however, does not end our inquiry. A habeas petitioner may escape the effect of a procedural default by showing, depending on the nature of the procedural default, either that: (1) the petitioner did not deliberately bypass the state procedures, see Fay v. Noia, 372 U.S. 391, 438-39, 83 S.Ct. 822, 848-49, 9 L.Ed.2d 837 (1963), or (2) that there was cause for and actual prejudice from the procedural default, see Wainwright v. Sykes, 433 U.S. at 90-91, 97 S.Ct. at 2508. Thus, we must next determine which standard applies to this case. We turn first to the Wainwright analysis.
 
 
 40
 The Supreme Court has applied the cause and prejudice standard to a claim barred by failure to comply with a contemporaneous objection rule, see Wainwright, and to a claim barred by failure to comply with a pretrial objection rule, see Francis v. Henderson, 425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d 149 (1976). We believe that the rationale for applying the standard to those two kinds of procedural defaults is also applicable to a procedural default in failing to raise an issue within reasonable state time limits.
 
 
 41
 The Supreme Court, in Wainwright and Francis, identified four factors that supported application of the cause and prejudice standard to a procedural default. See Forman v. Smith, 633 F.2d 634, 639 (2d Cir. 1980), cert. denied, 450 U.S. 1001, 101 S.Ct. 1710, 68 L.Ed.2d 204 (1981). We turn now to an examination of the application of those factors to a procedural rule such as Rule 3:22-12.
 
 
 42
 First, notions of federalism and comity suggest that reasonable state procedural rules are entitled to respect in the federal courts. See Wainwright, 433 U.S. at 88, 97 S.Ct. at 2507; Francis, 425 U.S. at 541-42, 96 S.Ct. at 1711. The five-year rule, like a contemporaneous objection rule, serves important state interests. Compliance with the rule is more likely to result in the development of a meaningful record in state court on a constitutional claim. The passage of time makes it more and more difficult for a court to reconstruct events that occurred years before. In this case, for example, prosecutor Kaczorowski's affidavit shows that his memory of what happened in regard to the "failure to communicate the plea bargain" issue is hazy. Foreman is in his eighties, and Kaufman is dead. It appears to us that a key factual question in regard to the substance of Caruso's plea bargaining claim would be whether Kaufman ever talked to Caruso (or his family) about a plea bargain. The Carusos swear he did not. On the other hand, the prosecutor's affidavit avers that "Kaufman indicated to me that he felt that the plea bargain should be accepted."
 
 
 43
 We think that Rule 3:22-12 is a reasonable procedural requirement, at least when applied to a case such as this one. We thus think that notions of comity and federalism demand that we should give Rule 3:22-12 the same respect as we would a contemporaneous objection rule.
 
 
 44
 Second, deference to state procedural rules may contribute to finality in criminal litigation. See Wainwright, 433 U.S. at 88-89, 97 S.Ct. at 2507; Francis, 425 U.S. at 542, 96 S.Ct. at 1711. This concern is not as strong in the current case as in a contemporaneous objection case, but it is still present. Timely compliance with a contemporaneous objection rule may result in the exclusion of evidence, in which case there will be no further proceedings on the issue. Rule 3:22-12 also contributes to finality, by mandating an end to criminal litigation five years after conviction. Also, had Caruso presented his claim earlier, it might have been finally decided. This is so because earlier presentation might have resulted in development of a more complete record, which would make it more likely that the state court decision on Caruso's claim would be insulated from federal habeas review. See 28 U.S.C. § 2254(d)(3) (denying presumption of validity to state court findings only if "the material facts were not adequately developed at the State court hearing"); 28 U.S.C. § 2254(d)(8) (denying presumption of validity to state court findings only if they are "not fairly supported by the record").
 
 
 45
 Closely related to the concern for finality is the Wainwright Court's fear of "sandbagging." 433 U.S. at 89-90, 97 S.Ct. at 2507-08. See also Engle v. Isaac, --- U.S. ----, 102 S.Ct. 1558, 1572 n. 34, 71 L.Ed.2d 783 (1982). In a case of Caruso's type, there is also a possibility for sandbagging, although it would more likely occur at the instance of the defendant than of his attorney. In many cases, prosecutors suggest plea negotiations. Typically, the prosecutor may talk to the defense lawyer, who talks to the defendant. In most cases in which there is an offer of plea negotiations, only the defendant and his lawyer know what is communicated to the defendant. If the plea negotiations are rejected and the defendant is convicted after a trial, the only person who would be in a position to contradict the defendant's version of what his lawyer told him would generally be the lawyer. If defendant's lawyer is unable to testify, then, absent documentation, generally no one will be able to contradict the defendant's version of what he was told. One way to guard against this possibility is to force such claims to be raised within a reasonable time after trial.
 
 
 46
 Third, compliance with state procedural rules leads to decision of all issues in as few proceedings as possible, thus increasing the chance that the question of guilt or innocence will be decided rightly. See Wainwright, 433 U.S. at 90, 97 S.Ct. at 2508; see also Engle, 102 S.Ct. at 1571. Although Rule 3:22-12 has no effect on the accuracy of the decision of guilt or innocence, it does further the similar goal of accurate determinations of the facts related to Caruso's constitutional claims, simply for the reason that memories fade, and witnesses may become unavailable. See Forman v. Smith, 633 F.2d at 640, in which the court stated:
 
 
 47
 A time lag of that magnitude (federal habeas proceeding five years after trial) will clearly have a major impact on the availability and recollection of witnesses.... (T)he concern for accuracy is especially forceful with respect to factfinding into circumstances that were not developed at, or prior to, the first trial and that underlie the constitutional claim.
 
 
 48
 Fourth, compliance with Rule 3:22-12 furthers the goal that the state proceedings at trial, on direct appeal, and during the first post-conviction proceeding, are the proceedings in which all of the defendant's efforts are concentrated, just as compliance with a contemporaneous objection rule protects the integrity of the trial as the " 'main event.' " Wainwright, 433 U.S. at 90, 97 S.Ct. at 2508. See also Engle, 102 S.Ct. at 1571. Ineffective assistance of counsel may be more easily made out by cumulating counsel's errors. Indeed, in Caruso's first post-conviction proceeding, one of the claims raised was that Foreman rendered ineffective assistance by failing to prepare adequately. There is every incentive to have all of Caruso's ineffective assistance of counsel claims considered in one post-conviction proceeding.
 
 
 49
 Our review of the Wainwright analysis shows that it is applicable to the sort of procedural default that occurred here. We think that it is more applicable than the Fay analysis. Although Wainwright did not overrule Fay, see 433 U.S. at 88 n. 12, 97 S.Ct. at 2507 n. 12; Boyer v. Patton, 579 F.2d 284, 286 (3d Cir. 1978) (implicit holding), we have doubts whether the deliberate bypass rule of Fay is applicable in any context other than that presented by the facts of that case, a failure to take a direct appeal. Wainwright 's rationale is not easily reconcilable with that of Fay, and we are reluctant to ignore the rationale of the more recent case. Indeed, the ascendancy of the cause and actual prejudice standard is reflected in the broad language of Engle v. Isaac, in which the Court refused to limit the Wainwright rule to "cases in which the constitutional error did not affect the truthfinding function of the trial." 102 S.Ct. at 1572. The Court held that:
 
 
 50
 The costs (entailed by the use of the writ) do not depend upon the type of claim raised by the prisoner. While the nature of a constitutional claim may affect the calculation of cause and actual prejudice, it does not alter the need to make that threshold showing.... (A)ny prisoner bringing a constitutional claim to the federal courthouse after a state procedural default must demonstrate cause and actual prejudice before obtaining relief.
 
 
 51
 Id.
 
 
 52
 Thus, we hold that the cause and actual prejudice standard applies to the failure to raise ineffective assistance of counsel claims in a manner complying with a reasonable state procedural rule limiting the time in which such claims may be raised. Cf. Forman v. Smith, 633 F.2d at 640 (procedural default of failing to raise an issue on direct appeal bars habeas review unless cause and prejudice is shown); Cole v. Stevenson, 620 F.2d 1055 (4th Cir.) (en banc) (same), cert. denied, 449 U.S. 1004, 101 S.Ct. 545, 66 L.Ed.2d 301 (1980); Evans v. Maggio, 557 F.2d 430, 434 (5th Cir. 1977) (same). But cf. Guzzardo v. Bengston, 643 F.2d 1300, 1304 (7th Cir.) (refusing to extend cause and actual prejudice standard to a procedural default resulting from the failure to raise an ineffective assistance of counsel claim on direct appeal), cert. denied, 452 U.S. 941, 101 S.Ct. 3085, 69 L.Ed.2d 955 (1981).
 
 B. Cause and Prejudice
 
 53
 The next question we must decide is whether Caruso demonstrated cause and actual prejudice. We believe that there is a factual dispute whether there was cause for and prejudice from Caruso's failure to raise the plea bargaining issue within the five-year period required by Rule 3:22-12. We will remand to the district court to resolve that dispute.
 
 
 54
 Caruso's petition alleged cause, stating that he had not previously presented his claims because:
 
 
 55
 they were kept hidden by the authorities and were not discovered until present counsel began an investigation. As a result of securing Affidavits from the individuals involved in the defense and prosecution of the State charges, counsel learned that a plea offer had been made and communicated to defense counsel; however, defense counsel never communicated same to the defendant for his consideration.
 
 
 56
 The State denied these allegations in its answer to Caruso's petition filed in the district court.
 
 
 57
 The district court stated that even if Caruso had procedurally defaulted, he had alleged cause:
 
 
 58
 His claims are addressed to the ineffective assistance of both trial and appellate counsel, counsel which represented (Caruso) during the actionable period. In view of the allegation that counsel, contrary to his affidavit, withheld information which should have been communicated to (Caruso, Caruso) would, if this allegation is proved, demonstrate good cause for delay. In other words, the record does not indicate any reason that (Caruso) should have known earlier of the facts supporting his claim.
 
 
 59
 515 F.Supp. at 679 n. 5. We believe, however, that it is not sufficient for the petitioner merely to allege cause; the district court must also find that cause exists.
 
 
 60
 The Supreme Court has stated that cause and prejudice "are not rigid concepts." Engle v. Isaac, 102 S.Ct. 1558, 1575 (1982). A determination of cause often turns on factual findings. Such a determination is impossible on the record before us. Neither the state court nor the district court conducted an evidentiary hearing, and the state court made no factual findings.[5]
 
 
 61
 It is true that the district court characterized the state court's conclusion as a finding and deemed it necessary to address the requirements of 28 U.S.C. § 2254(d). That section provides:
 
 
 62
 (d) in any proceeding instituted in a Federal court by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination after a hearing on the merits of a factual issue, made by a State court ... shall be presumed to be correct,....
 
 
 63
 ....
 
 
 64
 (8) or unless ... the Federal court on a consideration of such part of the record as a whole concludes that such factual determination is not fairly supported by the record....[6]
 
 
 65
 But what the state court did was to hold that Caruso had not presented sufficient evidence to establish that a plea offer was made. We think that the effect of the state court's ruling was to announce a conclusion of law, viz., that the petition and supporting affidavits were insufficient to state a constitutional claim. To the extent that the district court rejected that conclusion, we agree. The district court, however, must go on to consider the issue of cause. In addressing that issue, the district court must conduct an evidentiary hearing before making its own findings of fact and legal determination. See Jenkins v. Anderson, 447 U.S. 231, 234 n. 1, 100 S.Ct. 2124, 2127, n. 1, 65 L.Ed.2d 86 (1980) (dictum) (whether cause and prejudice exists "may turn on factual findings that should be made by a district court"); Runnels v. Hess, 653 F.2d 1359, 1364 & n. 6 (10th Cir. 1981); Dietz v. Solem, 640 F.2d 126, 132-33 (8th Cir. 1981) (remanding to the district court to find whether cause exists); Mendiola v. Estelle, 635 F.2d 487, 490 (5th Cir. 1981) (per curiam) (implicit holding); Hockenbury v. Sowders, 620 F.2d at 116 (remanding because record insufficient to decide whether there was cause). We will remand for an evidentiary hearing on the issue of cause.
 
 
 66
 On remand, the district court must consider the cause issue in light of Engle v. Isaac, --- U.S. ----, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982), which was not available to the district court at the time of its earlier decision. In Wainwright, the Supreme Court did not give any content to the meaning of cause, but that omission was partially remedied in Engle. In Engle, the procedural default was a failure by counsel to comply with the state's contemporaneous objection rule. The Court held that unawareness of a constitutional objection, at least where counsel could have known of its existence, did not constitute cause, see id. 102 S.Ct. at 1573-75. But the Court also counseled against a rigid interpretation of cause and prejudice, and stated that "victims of a fundamental miscarriage of justice will (be able to) meet the cause-and-prejudice standard." Id. at 1575.
 
 
 67
 The district court must also find actual prejudice before it may properly consider the merits of Caruso's claim. If, for example, Caruso would not have accepted the plea bargain, if communicated, then there was no actual prejudice.
 
 
 68
 We will remand Caruso's plea bargaining claim for a determination of cause and prejudice.
 
 C. The Merits
 
 69
 Should the district court find cause and prejudice, it must then address the merits of the petition. Before deciding the merits, the district court must hold an independent evidentiary hearing and make its own findings of fact. See Walter v. Wilmot, 603 F.2d 1038, 1041-42 (2d Cir. 1979) (when state court findings not conclusive under 28 U.S.C. § 2254(d)(3) & (6), federal court must find them after a hearing), cert. denied, 449 U.S. 885, 101 S.Ct. 239, 66 L.Ed.2d 111 (1980); Thomas v. Estelle, 587 F.2d 695, 697 (5th Cir. 1979) (when state record is silent, federal district court must make its own findings).
 
 
 70
 We do not minimize the difficult legal and factual issues that the district court must face should it address the merits of this petition. Whether there is any way the state court can conduct an evidentiary hearing and resolve the merits of the petition in the first instance should the district court decide that the merits must be reached, we leave to the parties and the district court.III.
 
 
 71
 The order of the district court in No. 81-2395 will be vacated and the matter remanded for proceedings consistent with this opinion.
 
 
 72
 The order of the district court in No. 81-2484 will be affirmed.
 
 
 
 [1]
 On his cross-appeal (No. 81-2484) Caruso raised the three other claims of ineffective assistance of counsel previously mentioned. He argued that they resulted in violations of his sixth amendment rights. We are satisfied that in this setting, at least, they were not of sufficient substance to meet the threshold requirement of the habeas corpus statute. We will therefore affirm No. 81-2484 on that basis
 
 
 [2]
 We realize, of course, that the trial judge might not have approved the alleged terms of the plea bargain
 
 
 [3]
 Because we have doubts as to Rule 3:22-4's effect, and because we are not sure whether Rule 3:22-5 applied to all the claims Caruso now raises, we assume for purposes of analysis that his claims were barred only by Rule 3:22-12
 
 
 [4]
 We do not view Williams v. Georgia, 349 U.S. 375, 75 S.Ct. 814, 99 L.Ed. 1161 (1955), where the Court considered the effect of a discretionary state procedural bar on its jurisdiction on direct review, as determinative in this proceeding. No contention has been made that New Jersey's application of its procedural rule is not "on a principled rather than ad hoc basis." See Breest v. Perrin, 655 F.2d 1, 4-5 n. 8 (1st Cir.), cert. denied, 454 U.S. 1059, 102 S.Ct. 610, 70 L.Ed.2d 597 (1981). Moreover, the facts of this case are quite unlike the "extraordinary situation" presented in Williams. See 349 U.S. at 390-91, 75 S.Ct. at 823
 
 
 [5]
 The trial judge noted that, based on his recollection of the trial, Caruso was not interested in plea bargaining. The parties did not address this issue at the state court hearing, and we do not consider this a factual finding based on record evidence
 
 
 [6]
 The state appellate court did not purport to engage in any fact finding. Thus, the holding of Sumner v. Mata, 449 U.S. 539, 546, 101 S.Ct. 764, 768, 66 L.Ed.2d 722 (1981), that findings of state appellate courts are entitled to the same presumption of correctness under § 2254(d) as trial courts, is inapplicable here