[Crim. No. 29419. Second Dist., Div. Four. Oct. 7, 1977.]

THE PEOPLE, Plaintiff and Appellant, v.
VICTOR LOUIE RODRIGUEZ, Defendant and Respondent.

1024

**COUNSEL**

John K. Van de Kamp, District Attorney, Donald J. Kaplan and Barry R. Levy, Deputy District Attorneys, for Plaintiff and Appellant.

Wilbur F. Littlefield, Public Defender, Harold E. Shabo and H. Reed Webb, Deputy Public Defenders, for Defendant and Respondent.

**OPINION**

**JEFFERSON (Bernard), J.**—This is an appeal by the People (pursuant to Pen. Code, § 1238, subd. (a)(3)) from an order granting defendant's motion for a new trial. The order was made after a jury returned a verdict finding defendant guilty of four counts of first degree robbery with an additional finding of the use of a firearm within the meaning of Penal Code section 12022.5. After the verdict, defendant's retained counsel was relieved and the public defender was appointed in his place. Evidence was taken at a hearing on the motion for a new trial. The court granted the motion on the ground that the defendant had been denied effective representation by counsel within the meaning of the Sixth and Fourteenth Amendments of the United States Constitution because trial counsel had failed to adequately investigate the case prior to trial.

The information charged defendant with five counts of robbery growing out of a robbery committed on June 25, 1975, at a Market Basket store located on Glendale Boulevard in Los Angeles. A different employee of the store was set forth in each count as a victim of the robbery. A sixth count of the information charged defendant with having committed an assault with a deadly weapon upon one of the employees, a violation of Penal Code section 245, subdivision (a). Counts IV and VI

were dismissed at the conclusion of the People's case in chief upon motion of the People.

At the trial, the evidence established that there was a robbery committed at the Market Basket store on June 25, 1975. Witnesses testified that, at about 10:30 p.m., when the market was closing, a gunman entered the store behind a box boy who had been sent out to collect the shopping carts. The man pointed a handgun at the manager and told him not to move; the man proceeded with the box boy to the store's office area and instructed the manager and two other employees to lie down on the floor. The first robber was joined by two other gunmen who subsequently entered the market through the same door. They collected the other employees, a total of eight, and ordered them to the back of the store. Cash drawers were rifled and money was removed from an open safe. The employees were tied up with twine and a dog leash taken from a rack in the store. Jewelry and wallets were removed from the persons of the employees. The robbers left the employees tied up in the back of the store.

Four store employees testified at the trial and identified the defendant, with varying degrees of certainty, as the first robber to enter the store. These witnesses testified that the robbers were speaking Spanish to each other, and several witnesses who knew the Spanish language testified that the Spanish was spoken with an accent that was either Puerto Rican or Cuban; that it was not Spanish with a Mexican accent.

Defendant took the stand in his defense and denied committing the robbery. He said that he had spent the evening of June 25, 1975, in the company of his common law wife, Dorothy Silvas, and that they watched a number of television shows. Defendant also testified that he did not speak Spanish at all. Defendant's father was called to the stand and also testified that his son did not speak the Spanish language at all. Dorothy Silvas testified about her recollection of the television programs that they were watching at the time of the robbery.

It is the contention of the People on this appeal that the trial court abused its discretion and committed reversible error by granting defendant's motion for a new trial on the erroneous ground that defendant's constitutional right to adequate representation by counsel had been violated by counsel's failure to properly investigate the case and locate and interview potential witnesses.

At the hearing of the motion for a new trial, it was established that defendant's trial counsel had received copies of police reports involving the Market Basket robbery and, in addition, a robbery of a Thriftimart store two days later; that both of the police reports listed potential witnesses that were not called by the prosecution and that counsel made no effort to interview or have these persons interviewed by an investigator. The extent of trial counsel's investigation consisted of interviewing defendant, his girl friend and defendant's father. No attempt was made by trial counsel to locate any witnesses other than defendant's immediate family to corroborate defendant's statement that defendant spoke no Spanish.

The People rely principally upon the case of *People* v. *Kirchner* (1965) 233 Cal.App.2d 83 [43 Cal.Rptr. 218], for its contention that any failure by defendant's trial counsel to investigate potential witnesses in the case at bench did not rise to the level of constituting constitutional inadequacy of counsel representation.

In *Kirchner,* the inadequacy of trial counsel was alleged on an appeal from a judgment convicting the defendant of the sale of heroin to an undercover police officer. Contrary to the officer's testimony, the defendant testified at his trial that he did not make such a sale. The inadequacy of counsel was asserted to be the failure of counsel to call a witness who would testify that he was present and corroborate defendant's version that no sale took place. The *Kirchner* court rejected the inadequacy-of-counsel contention by stating that the testimony of the uncalled witness "was merely cumulative of the testimony given by appellant from the stand and does raise a conflict in the evidence, but it does not establish any *conclusive* defense that was overlooked by a lack of knowledge." (*Kirchner, supra,* 233 Cal.App.2d 83, 87.) (Italics added.)

The *Kirchner* court's view is predicated on its interpretation of a statement from *People* v. *Ibarra* (1963) 60 Cal.2d 460, 464 [34 Cal.Rptr. 863, 386 P.2d 487]: "It must appear that counsel's lack of diligence or competence reduced the trial to a 'farce or a sham.' [Citations.] It is counsel's duty to investigate carefully all defenses of fact and of law that may be available to the defendant, and if his failure to do so results in *withdrawing a crucial defense* from the case, the defendant has not had the assistance to which he is entitled." (Italics added.)

It is to be noted that the *Ibarra* court speaks of defense counsel's failure as constituting a withdrawal of a *crucial* defense, while the

*Kirchner* court speaks in terms of a *conclusive* defense being overlooked by a lack of knowledge on the part of defendant's counsel. There is a great deal of difference between the terms "crucial" and "conclusive." The *Kirchner* court's holding, therefore, constitutes a misreading of *Ibarra.*

In *Ibarra,* the "crucial" defense that was withdrawn was defense counsel's failure to assert a defense of an illegal search and seizure because of the mistaken notion that a defendant may not challenge the legality of a search and object to the admission of contraband seized, unless he claims a proprietary interest in the premises searched. In holding that the defendant had been denied his constitutional right to "effective aid in the preparation and trial of the case" (see *Powell* v. *Alabama* (1932) 287 U.S. 45, 71 [77 L.Ed. 158, 172, 53 S.Ct. 55, 84 A.L.R. 527]), the *Ibarra* court concluded that defense counsel's failure "deprived defendant of an *adjudication* of what was clearly the stronger of the two defenses available to him." (*Ibarra, supra,* 60 Cal.2d 460, 465-466.) (Italics added.)

*Ibarra* does not hold that the "adjudication" of which defendant has been deprived by the failure of counsel would result inexorably in a defendant's acquittal. It is the failure to have an appropriate *adjudication* of a defense that reduces the trial to a "farce or a sham," and which thus renders a defendant's trial fundamentally unfair—in violation of the constitutional due process rights guaranteed to a defendant.

The *Kirchner* doctrine that the incompetence of counsel must remove a *conclusive* defense envisions a projected result of adjudication of a defense that is beyond the capacity of a reviewing court to divine. ■ Even though the rule of law is clear that "[t]o justify relief on this ground [lack of effective aid in the preparation and trial of the case], 'an extreme case must be disclosed' " (*Ibarra, supra,* 60 Cal.2d 460, 464), we do not construe the rule to require a showing that defense counsel failed to present *any* evidence at all on a particular crucial defense.

The People argue that the *Kirchner* rule was approved by the California Supreme Court in *People* v. *Hill* (1969) 70 Cal.2d 678 [76 Cal.Rptr. 225, 452 P.2d 329]. This view is predicated upon the *Hill* court's citation of *Kirchner* for the statement: "It is not enough that defendant alleges omissions of counsel indicating lack of preparation and general incompetence. He must show that such acts or omissions resulted in withdrawal of a *crucial* defense from the case." (*Hill, supra,*

70 Cal.2d 678, 689.) (Italics added.) The *Hill* court did not use the term, "conclusive defense," found in *Kirchner,* but rather, the term, "crucial defense," found in *Ibarra.*

Although the *Hill* court points out that "[w]hen a defendant asserts that his constitutional right to adequate representation by competent counsel has been violated, the burden of sustaining the allegation rests upon him" (*Hill, supra,* 70 Cal.2d 678, 688-689), it does not hold that this burden of proof can never be met by proof that defense counsel's failure was a failure to produce and call witnesses whose testimony would raise a conflict in the evidence regarding a crucial defense.

The law is well settled that a constitutionally inadequate representation by counsel is not established by a showing merely that defense counsel has failed to interview and call *all* prospective witnesses (*People v. Floyd* (1970) 1 Cal.3d 694, 710 [83 Cal.Rptr. 608, 464 P.2d 64]), since some witnesses may, with apparent certainty, be of little or no assistance to the defense, and since "the choice of which, and how many, of potential witnesses is precisely the type of choice which should not be subject to review by an appellate court." (*Floyd, supra,* 1 Cal.3d 694, 709.)

The crucial issue before us is whether the failure to investigate a case and ferret out available witnesses whose testimony may bolster the credibility of an alibi defense by discrediting eyewitness identification of defendant as the perpetrator of the charged offenses—under the circumstances presented in the case at bench—came within the orbit of the *Ibarra* requirement that counsel's failure must result in the withdrawal of a crucial defense which has the effect of reducing the trial to a farce or a sham.

Of course, the clearest cases are those involving the total absence of any evidence being introduced to establish a particular defense. *People v. Shells* (1971) 4 Cal.3d 626 [94 Cal.Rptr. 275, 483 P.2d 1227], represents such a case. There, defense counsel's uninformed and erroneous opinion that defendant had been convicted of a prior felony resulted in a decision to keep defendant off the stand to preclude impeachment by evidence of a nonexistent prior felony conviction. The defendant in *Shells* would have testified to an alibi. But his counsel's uninformed decision "operated to withdraw a 'crucial' defense from the case." (*Shells, supra,* 4 Cal.3d 626, 631.) The *Shells* court concluded, therefore,

"that trial counsel's failure to ascertain the truth concerning the alleged prior felony conviction operated to deny defendant that effective assistance of counsel to which he was entitled under the Sixth and Fourteenth Amendments to the United States Constitution." (*Id.* at p. 630.)

It is of considerable significance that the *Shells* court did not draw a conclusion that defendant's alibi defense, if it had been tendered, would have resulted in an acquittal. The *Shells* court made no pretense at divining whether the jury would have believed or rejected the defendant's alibi testimony. "We cannot speculate upon what that alibi might have been or the effect of its consideration by the jury. Nor can we speculate upon what decision counsel might have made relative to defendant's testimony if he *had* learned that there was no threat of impeachment by evidence of a prior felony conviction." (*Shells, supra,* 4 Cal.3d 626, 631.) (Italics in original.)

Similar to *Shells* is the case of *In re Saunders* (1970) 2 Cal.3d 1033 [88 Cal.Rptr. 633, 472 P.2d 921], in which defense counsel made the decision *not* to present a diminished capacity defense to a murder charge without obtaining available medical reports reflecting past diagnosis and treatment, and without making any effort to have the defendant examined by a psychiatrist, even though counsel had been advised several months prior to trial that defendant had earlier sustained head injuries which resulted in organic brain damage. The *In re Saunders* court held that defense counsel's uninformed decision not to raise the defense of diminished capacity constituted a withholding of a crucial defense and operated to deny to the defendant the latter's constitutional right to the effective assistance of counsel. As in *Shells,* defense counsel's failure in *In re Saunders* resulted in a total absence of *any* evidence being offered to support a particular defense.

But neither *Shells* nor *In re Saunders* compels a conclusion that, in order for a record to demonstrate constitutional inadequacy of trial counsel, there must be a showing that counsel's failure resulted in a total absence of any evidence being introduced to support a crucial defense. That the withdrawal-of-a-crucial-defense concept should not have such a sterile and narrow meaning would seem to be dictated by the general principles from which this concept is derived. Thus, in *In re Saunders, supra,* 2 Cal.3d 1033, 1041-1042, the court stated: "Although the determination of whether the demands of due process have been met in a particular case is always 'a question of judgment and degree' to be

answered in light of all of the circumstances and with a view to 'fundamental fairness' [citations], certain general standards have evolved for the aid of the court making this determination. Fundamental among these is that which places upon counsel the duty to conduct careful factual and legal investigations and inquiries with a view to developing matters of defense in order that he may make informed decisions on his client's behalf both at the pleading stage [citations] and at trial [citations]. If counsel's 'failure [to undertake such careful inquiries and investigations] results in withdrawing a crucial defense from the case, the defendant has not had the assistance to which he is entitled.' [Citations.]"[1]

■ In the case at bench, the only defense offered by defendant was an alibi—given through the testimony of defendant and his "common law" wife, Dorothy Silvas. Hence, the issue of defendant's guilt or innocence turned on the credibility of defendant and Dorothy as witnesses contrasted with the credibility of the prosecution's witnesses who identified defendant as one of the perpetrators of the Market Basket robbery. A failure by defense counsel to investigate and produce potential witnesses who might cast doubt on the identification testimony of the prosecution's witnesses, and thus support the credibility of defendant and Dorothy Silvas as witnesses, under the circumstances involved in the case at bench, constitutes a withdrawal of a crucial defense just as effectively as if no testimony at all had been introduced to prove the alibi defense.

There is no magic formula for applying the rule that inadequate representation must reduce the trial to a farce or a sham before it amounts to a constitutionally inadequate representation. There is no logical distinction between the situation of counsel's inadequate preparation that results in the introduction of *no* testimony on a crucial defense and counsel's inadequate preparation that results in a failure to consider and introduce *corroborating* evidence needed to make a crucial defense, such as an alibi, substantial and effective. A defendant's trial is reduced

---

[1]In a footnote it is stated: "Cases involving a failure to make those careful factual and legal inquiries and investigations necessary to a constitutionally adequate defense are to be distinguished, of course, from cases wherein counsel, *having made such inquiries and investigations,* makes tactical or strategic decisions—whether wise or unwise when viewed with the benefit of hindsight—which cause him not to utilize the fruits of his labors. [Citations.] When, however, the knowledge necessary to an informed tactical or strategic decision is *absent* because of counsel's ineptitude or lack of industry, no such ground of justification is possible. [Citation.]" (*In re Saunders, supra,* 2 Cal.3d 1033, 1042, fn. 7.) (First italics added.)

to a farce or sham in the latter situation with equal effectiveness as in the former situation. We see nothing in *Ibarra, Hill, Shells* or *In re Saunders* that mandates a different conclusion.

At defendant's trial, some of the witnesses testified that the robbers were speaking Spanish to each other—a Spanish that was either Puerto Rican or Cuban but not a Spanish with a Mexican accent. Defendant testified that he did *not* speak Spanish to *any* extent. The police report[2] of the robbery listed other persons as witnesses whom defense counsel did not seek to interview. These persons may well have cast doubt on the validity of the identification testimony of the prosecution witnesses who testified by strengthening the view that the robbers were speaking a Cuban-type Spanish. It became essential, therefore, to bolster defendant's alibi defense by marshaling all available evidence to support defendant's testimony that he did *not* speak Spanish at all, and thus was not one of the robbers who were identified as speaking Spanish with a Cuban-type accent. One such witness was produced on the motion for a new trial. A thorough investigation by defense counsel could well have produced others. This failure, for all practical purposes, constituted a withdrawal of defendant's crucial defense of alibi—needed to discredit the testimony of the prosecution's witnesses who identified defendant as one of the perpetrators of the Market Basket robbery. We conclude, therefore, that defendant was denied his constitutional right to adequate representation of counsel.

The order granting defendant's motion for a new trial is affirmed.

Kingsley, Acting P. J., and Dunn, J., concurred.

A petition for a rehearing was denied October 27, 1977, and appellant's petition for a hearing by the Supreme Court was denied January 5, 1978.

---

[2]We have had lodged with us the exhibits introduced as part of defendant's motion for a new trial. These exhibits include copies of police reports of the Market Basket robbery here involved as well as of a robbery of a Thriftimart store two days after the Market Basket robbery. Defendant makes the contention that had defense counsel investigated witnesses to the Thriftimart robbery, it would have revealed a probability that the two robberies were committed by the same robbers—persons who spoke Spanish of the Cuban variety and used a dog leash to tie up the employees—a device also used in the Market Basket robbery. Defendant's contention on appeal is that the two robberies were committed by the same persons (see *People* v. *Haston* (1968) 69 Cal.2d 233 [70 Cal.Rptr. 419, 444 P.2d 91]) and, since defendant does not speak Spanish, he was not involved in either robbery. Whether defense counsel would have used witnesses to the Thriftimart robbery as part of defendant's defense would seem to fall into the category of a tactical judgment. Hence, we do not rest our decision on any failure by defense counsel to investigate witnesses to the Thriftimart robbery.