[Crim. No. 13658. Third Dist. Feb. 11, 1986.]

THE PEOPLE, Plaintiff and Respondent, v.
WILLIAM BROWN, Defendant and Appellant.

538

**COUNSEL**

Frank O. Bell, Jr., State Public Defender, under appointment by the Court of Appeal, and Julia Cline Newcomb, Deputy State Public Defender, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, James T. McNally, Clayton S. Tanaka and Judy Kaida, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**GILBERT, J.**\*—Defendant was convicted after jury trial of burglary, forcible rape, and forcible oral copulation and of having used a deadly weapon in commission of those crimes. He was sentenced to prison for 6 years.[1] The offenses involved entry into the house of defendant's former spouse and forcing her to engage in sexual acts at knife point. Preliminary plea negotiations with the district attorney resulted in an "offer" of a plea of guilty to a single count of violating Penal Code section 243.4,[2] sexual battery, and dismissal of the remaining charges. Although interested in the offer, defendant sought a promise that he would not receive a state prison commitment. The prosecution would not agree. Both sides felt a "pre-plea" report of the probation officer, concerning circumstances of the offense and of defendant's background, would assist in a resolution of the case.[3] A report was ordered by the court and prepared. Neither the court nor the parties informed the probation officer of the proposed plea agreement and the report was prepared on the assumption of conviction on all of the charged offenses.[4] Conviction on those charges made defendant ineligible for probation. (See §§ 462, 1203.06, subd. (a)(1)(vi), and 1203.065.) Consequently, the pre-plea report recommended a state prison commitment upon conviction. When defense counsel received the report and saw the error, he did nothing to correct it. Negotiations broke down and the case proceeded to trial, conviction, and a six-year prison term.

We consider here defendant's sole contention on appeal: That counsel's failure to seek a corrected preplea report constitutes inadequate represen-

---

*Assigned by the Chairperson of the Judicial Council.

[1]The court imposed the lower, mitigated term of 3 years for the forcible rape. It then added 3 years for the enhancement. The burglary count was stayed and all the remaining counts were ordered to be served concurrently with the rape sentence.

[2]The relevant provisions of Penal Code section 243.4 are in subdivision (a) which provides: "Any person who touches an intimate part of another person while that person is unlawfully restrained by the accused or an accomplice, and if the touching is against the will of the person touched and is for the purpose of sexual arousal, gratification, or abuse, is guilty of sexual battery. Such an act is punishable by either imprisonment in the county jail for not more than one year or in the state prison for two, three, or four years." Subsequent undesignated code references are to the Penal Code.

[3]Code of Civil Procedure section 131.3 authorizes a court to direct the preparation of a report of the probation officer before conviction to, "inquire into the antecedents, character, history, family environment and offense of [a defendant]." The report shall, "contain his recommendation for or against the release of such person on probation." These reports are commonly referred to as "pre-plea" reports.

[4]Defendant was charged by information filed May 5, 1983, with violation of section 459, burglary of a residence in the nighttime; four counts of violating section 288a, subdivision (c), forcible oral copulation; and two counts of violating section 261, subdivision (2), forcible rape. It was also alleged that he used a deadly weapon within the meaning of section 12022.3, subdivision (a), an enhancement adding three years to a state prison sentence on the forcible sex offences.

tation requiring reversal of his conviction. Consideration of the obligations of counsel in such pretrial negotiations takes us through legal waters largely uncharted in California. Our review of the facts, of the nature of plea negotiations and their essential role in the resolution of most criminal cases, and our review of counsel's obligations in that process leads us to conclude that defendant did not receive adequate representation at a critical stage of the proceedings against him. We find, however, that defendant has failed to establish the prejudice necessary for a reversal of his conviction. Consequently, we shall affirm.

## I. The Facts.

The facts supporting defendant's conviction are not of particular concern here. To a degree, however, they form an important context for the plea negotiations which do concern us. We therefore briefly mention the facts of the offenses. Defendant and the victim were married in 1970. The couple had four children. The parties divorced in 1981. After the divorce, defendant maintained contact with the children, who remained in the custody of their mother, the victim. After the divorce and about a year before the offense, defendant and the victim engaged in consensual sexual relations.

The victim testified that in the early morning hours of March 6, 1983, she awoke to find defendant, armed with a knife, in her bedroom. She was ordered to submit to the charged sexual acts by defendant, who kept the knife in his possession for the entire three hours she endured his attacks.

Defendant did not deny that the acts took place. His testimony in defense was that the acts were consensual and consistent with the prior occasions of postseparation consensual sex. Defendant denied threatening the victim with a knife, but admitted having a folded pocketknife in his possession which he may have used to secure the bedroom door, as he had also done innocently in the past.

Defendant was arrested and charged with the offenses. He was represented by the Sacramento County Public Defender in the municipal court, where he was held to answer after a preliminary examination. He was arraigned in the Superior Court on May 6, 1983, where the public defender was relieved and private counsel, Bill C. Asakawa (Asakawa), was appointed to represent him. After a continued arraignment hearing, trial was set for June 6, 1983. A "plea negotiation conference" was set for May 27, and a trial status conference for June 6th. With the agreement of the defendant and the district attorney, the June 6 trial date was continued to July 6, with a further status conference on July 5.

In late June, Asakawa had a series of discussions with the assigned prosecutor, Jeffrey Rose (Rose). Rose proposed defendant enter a plea of guilty to a single count of section 243.4, sexual battery. Prior offers from the district attorney had always involved a plea to one of the charged violent sexual offenses. Asakawa indicated defendant's interest in the plea offer but, in accordance with defendant's desires, wanted an assurance that defendant would not be committed to prison at the outset, but would receive probation with not more than one year in the county jail as a condition. The parties were unable to agree on disposition, but both sides felt the case could be resolved. Rose suggested that a preplea report be prepared on the basis of a plea to section 243.4 and indicated that, if the report recommended probation and the judge were inclined to grant it, he (Rose) would not recommend, but would not oppose, the disposition.[5] These negotiations were brought to the court's attention in chambers, and off the record, on the date set for trial, July 6. When the case was heard in open court, trial was continued on agreement of both sides and a referral was made to the probation department for preparation of a preplea report. Both counsel affirmed to the court their belief that a preplea report "might be fruitful in the resolution of this case." The report was ordered for August 4, also to be the date to set a trial, if necessary. Defendant's motion for reduction of bail from $15,000 to $5,000 was granted with the concurrence of the district attorney.

The specific premise of the preplea report referral, a plea to section 243.4, was not mentioned in the reported court proceedings and is not reflected in the clerk's minutes. Neither the court, defendant's counsel, nor the prosecutor informed the probation department of the anticipated plea to section 243.4. As a result, the report assumed "pleas" to all of the charged offenses. The probation department thus correctly assumed that defendant was legally ineligible for probation, and recommended a state prison sentence.

The completed report was received by Asakawa a few days before the August 4, hearing date. He noted the erroneous premise of the report, but had apparently forgotten Rose's offer to "submit" on a favorable report.

[5]The facts surrounding the negotiations, pre-plea report and surrounding events were evinced at a motion for new trial premised on a claim of inadequate representation. On defendant's motion, Asakawa was relieved and new counsel appointed to represent defendant in connection with the new trial proceedings. Declarations were submitted by Rose, the probation officer assigned to prepare the pre-plea report, Fred Allen, and several others. In addition, Asakawa testified, as did Hamilton Hintz, Jr., an experienced defense counsel, called as an expert witness on defendant's behalf. In his declaration, Rose claimed no recollection of the terms of the proposed plea, but affirmed that the preplea report was sought on the basis of it. Accordingly, the essential facts concerning the plea negotiations are uncontroverted.

He believed, however, that he could still obtain a plea agreement to section 243.4 with a no state prison promise because of what he felt were the mitigating factors in the case. He viewed the fact that the defendant had no previous criminal record, the credibility problems posed by the prior consensual sex acts and some expressed reluctance by the prosecution to have the children who were in the house at the time of the event testify as a solid basis for further negotiations.[6] In any event, Asakawa made no effort to get the report corrected or a new report prepared.

After the report was received, Asakawa did speak further with Rose. Rose was still offering a plea to sexual battery, but felt a three-year prison term was appropriate. Asakawa pushed Rose for a one year cap. Rose also still felt the case could be resolved and offered to speak with his superiors about the proposed disposition. The reply was not favorable and Rose held to the three-year term position. Negotiations broke off and the case proceeded to trial.

The probation officer who prepared the preplea report indicated that he was unaware of the proposed plea to section 243.4. Had he been, or if the case had been referred back to him again, he would have evaluated defendant for probation. As it was, he did not.

The testimony and declaration of an experienced criminal defense attorney was also presented at defendant's new trial motion. This testimony established that preplea reports are useful to resolve difficult criminal cases. Generally, where agreement is reached on a plea, there is also agreement to use the preplea report as the presentence report to avoid an additional referral to the probation department. (See § 1203, subd. (b).) The expert opined that Asakawa's failure to pursue an accurate or corrected report and his failure to supply favorable information about the defendant to the probation officer was inadequate representation and that a result more favorable to defendant would have occurred had the report been prepared on the proper basis.

## II. DISCUSSION

■   We pause briefly to restate the basic obligations of counsel to criminal defendants. "To render reasonably competent assistance, an attorney in a criminal case must perform certain basic duties. Generally, the Sixth Amendment and article I, section 15 [of the California Constitution] require counsel's 'diligence and active participation in the full and effective preparation of his client's case.' [Citation.] Criminal defense attorneys have a

---

[6]The conclusion was shared by defendant's expert witness, Hintz.

' "duty to investigate carefully all defenses of fact and of law that may be available to the defendant. . . ." ' [Citation.] This obligation includes conferring with the client 'without undue delay and as often as necessary . . . to elicit matters of defense . . . .' [Citation.] 'Counsel should promptly advise his client of his rights and take all actions necessary to preserve them. . . . Counsel should also be concerned with the accused's right to be released from custody pending trial, and be prepared, where appropriate, to make motions for pretrial psychiatric examination or for the suppression of evidence. [Fn. omitted.]' " [Citation.] (*People* v. *Pope* (1979) 23 Cal.3d 412, 424-425 [152 Cal.Rptr. 732, 590 P.2d 859, 2 A.L.R.4th 1].)

■ There is no doubt, moreover, that these obligations are as important at the time the decision is made to enter a plea as they are during the course of a trial.[7] "Bargaining for pleas is, of course, an important factor in the administration of the criminal law. But at the time of determining whether to accept such a bargain the accused is entitled to the advice and assistance of counsel, based upon an investigation of the facts and law of his case. The plea of guilty 'constitutes an admission of every element entering into the offense charged, and constitutes a conclusive admission of defendant's guilt.' [Citation.] Counsel is particularly qualified to make such a recommendation because it is he, not his client, who possesses the skills to analyze the nature of the charges, to evaluate the evidence, and to make informed recommendations. [¶] Deprivation of the right to counsel at the pleading stage because of incompetency can well constitute a deprivation of due process. Although plea bargains may expedite proceedings in the criminal courts, such expedition cannot be a substitute for due process." (*In re Hawley* (1967) 67 Cal.2d 824, 828 [63 Cal.Rptr. 831, 433 P.2d 919]; fns. omitted. See also *In re Williams* (1969) 1 Cal.3d 168, 174-176 [81 Cal.Rptr. 784, 460 P.2d 984]; *People* v. *Stanworth* (1974) 11 Cal.3d 588 [114 Cal.Rptr. 250, 522 P.2d 1058]; *Hill* v. *Lockhart* (1985) 474 U.S. — [88 L.Ed.2d 203, 106 S.Ct. 366].)

The usual circumstance presented by challenges to the effectiveness of counsel in the arena of pleas is the claim that counsel was inadequate in advising the defendant to plead guilty. (See, e.g., *Hawley, supra, Williams, supra,* and *Stanworth, supra.*) In such circumstances, reversible error is established where counsel's failure to investigate the facts or law results in the withdrawal of a potentially meritorious defense. (*Ibid.*) In *Williams,* for example, counsel advised a plea of guilty to felony forgery charges where the offenses were legally punishable only as misdemeanor credit card offenses. Defendant had an absolute defense to the charges under the doctrine

---

[7]"Indeed, a substantial portion of the obligation counsel owes is not directly connected with the trial but involves investigation and advice at pretrial and posttrial stages. [Citation.]" (*People* v. *Pope, supra,* 23 Cal.3d at p. 423.)

expressed in an earlier Court of Appeal case, *People* v. *Swann* (1963) 213 Cal.App.2d 447 [28 Cal.Rptr. 830], of which counsel was inexplicably unaware. Counsel's failing withdrew an obviously meritorious defense without tactical, or any, justification. (*Williams, supra,* 1 Cal.3d at p. 177.)[8]

**(3a)** Here we confront a different, and for California courts, unique variation.[9] We are not confronted with a claim that a plea was entered without counsel's effective advice, but with a claim that counsel's ineffectiveness deprived defendant of the opportunity to enter a favorable plea pursuant to a bargain.

Reaching this ultimate issue requires us to determine 1) the existence and extent of counsel's obligation to pursue a "plea bargain" on behalf of a criminal defendant and 2) when the failure to discharge that obligation constitutes reversible error following conviction by jury trial. We turn to that task.

In *People* v. *West* (1970) 3 Cal.3d 595 [91 Cal.Rptr. 385, 477 P.2d 409], the Supreme Court noted the prevalence and essential role of "plea bargains" in the administration of justice. "Plea bargaining has become an accepted practice in American criminal procedure, 'an integral part of the administration of justice in the United States [citation], essential to the expeditious and fair administration of justice. [Citation.] The great majority of criminal cases are disposed of by pleas of guilty, and a substantial number of these pleas are the result of prior dealings between the prosecutor and the defendant or his attorney.' [Citation.]

"Both the state and the defendant may profit from a plea bargain. The benefit to the defendant from a lessened punishment does not need elaboration; the benefit to the state lies in the savings in costs of trial, the increased efficiency of the procedure, and the further flexibility of the criminal process. Numerous courts, commissions, and writers have recognized that the plea bargain has become indespensible to the efficient administration of criminal justice. Professor Newman, in his study of plea bargaining, notes

---

[8]*Stanworth* involved a claim that a defense of diminished capacity was insufficiently explored by counsel before advising a plea of guilty. The claim was rejected in *Stanworth,* however, as the court found counsel's investigation adequate and that the defense would have been unavailing.

[9]A number of state and federal courts have confronted the problem. (See Annot., Adequacy of Defense Counsel's Representation of Criminal Client Regarding Plea Bargaining, 8 A.L.R.4th 660.) One California case has considered a related claim of ineffective assistance of counsel in advising withdrawal of a guilty plea entered pursuant to a plea bargain. (*People* v. *Jackson* (1981) 121 Cal.App.3d 862 [176 Cal.Rptr. 166].) The *Pope* standard was applied without discussion and, finding counsel's actions met the standard of competence, the court did not reach the question of the appropriate test for reversible error.

that 'A steady flow of guilty pleas and the corresponding avoidance of the time, expense, and uncertainty of trials is important to the smooth functioning of most criminal courts. . . . Plea negotiations, with bargains duly honored, is a device necessary to administration if a steady flow of guilty pleas is to maintained.' [Citation.]

"Plea bargaining also permits the courts to treat the defendant as an individual, to analyze his emotional and physical characteristics, and to adapt the punishment to the facts of the particular offense. [Citation.] In some cases, only the bargained reduction in the charge can enable the judge to exercise his discretion as to meaningful sentencing alternatives. The [American Bar Association, Standards Relating to Pleas of Guilty] note that 'Conviction of the offense actually committed may result in severe restrictions on the sentencing judge's discretion; for example, the offense may carry a high mandatory minimum sentence or may not be probationable. Trial judges are extremely critical of such restrictions, as they feel that by "accepting lesser pleas . . . [there may result] a finer adjustment to the particular crime and offender than the straight application of the rules of law would permit." ' " (West, supra, at pp. 604-605; fns. omitted.)

When these words were written, approximately 68 percent of the criminal cases disposed of in the Superior Courts of California were disposed of before trial by pleas of guilty and other means. (Judicial Council of Cal., Annual Rep. (1971) p. 110.) Despite the recent enactment of laws designed to limit "plea bargaining,"[10] the practice not only continues, but has apparently increased. From 1983 to 1984, the number of cases disposed of by pleas of guilty in the Superior Court increased by 1 percent, such that 81 percent of all Superior Court criminal dispositions were by guilty pleas. (Judicial Council of Cal., Annual Rep. (1985) pp. 117-118.)[11]

---

[10]Proposition 8, adopted by the voters at the June 1982 primary election, included restrictions on "plea bargaining" in cases involving any of 25 listed offenses or categories of offense. (Pen. Code, § 1192.7.) Section 1192.6 was added by statute in 1981 to require a statement of reasons on the record for a reduction or dismissal of any felony offense and a statement of the prosecutor's reasons for agreeing to a plea which specifies the punishment to be imposed. (Stats. 1981, ch. 759, § 1 p. 2965.)

[11]The effect, if any, of the "limitations" of Proposition 8 appears to be on where, and not whether, bargaining takes place. Section 1192.7 applies only to bargains concerning "indictments or informations" and thus does not limit plea bargaining concerning charges contained in complaints before the municipal or justice court. As a result, Proposition 8 appears to have accelerated an already growing trend of guilty pleas in the lower courts. (See § 859a.) In "serious felonies," those within the limitations of section 1192.7, the percentage of such pleas as a proportion of all superior court dispositions increased from 23.4 percent to 41.6 percent from the period of July-December 1982 to the same period in 1984. The percentage of pleas in other felonies only increased from 26.6 percent to 35.5 percent in the same period. (BCS Focus: Controlling Plea Bargaining in California (1985) (Cal. Dept. of Justice).)

Plea bargaining involves agreements that affect both what defendants are convicted of and the sentences they receive. (See e.g., *People* v. *Edgmon,* (1968) 267 Cal.App.2d 759, 769 [73 Cal.Rptr. 634].) One recent study of the dispositions of burglary and robbery cases in three California counties shows that an average of 33 percent of such cases involved a "charge bargain," 23 percent involved a "sentence bargain" and 45 percent involved both. (Plea Bargaining, Final Rep. of the Joint Com. for Revision of the Penal Code (Cal. Legislature, Oct. 31, 1980).)

These bargains provide a substantial benefit to the accused. The same study showed that burglary and robbery defendants convicted after jury trial in the three counties received an average 78 percent of the theoretical maximum sentence, while those sentenced after a plea bargain for those crimes received only 37 percent.

Plea bargaining, both charge and sentence bargaining, is also explicitly authorized by statute. Section 1192.5 authorizes pleas pursuant to agreements between the prosecutor and defendant and permits such an agreement to specify the punishment to be imposed as a condition of the plea. Such "conditional" pleas are subject to the court's approval.[12]

■ The continued prevalence and importance of the disposition of criminal cases through mutually beneficial plea bargains leads us to conclude

---

[12]Section 1192.5 provides: "Upon a plea of guilty or nolo contendere to an accusatory pleading charging a felony, other than a violation of subdivision (a) or (3) of Section 261, Section 264.1, Section 286 by force, violence, duress, menace or threat of great bodily harm, subdivision (b) of Section 288, Section 288a by force, violence, duress, menace or threat of great bodily harm, or Section 289, the plea may specify the punishment to the same extent as it may be specified by the jury on a plea of not guilty, or fixed by the court on a plea of guilty, nolo contendere, or not guilty, and may specify the exercise by the court thereafter of other powers legally available to it.

"Where such plea is accepted by the prosecuting attorney in open court and is approved by the court, the defendant, except as otherwise provided in this section, cannot be sentenced on such plea to a punishment more severe than that specified in the plea and the court may not proceed as to such plea other than as specified in the plea.

"If the court approves of the plea, it shall inform the defendant prior to the making of the plea that (1) its approval is not binding, (2) it may, at the time set for the hearing on the application for probation or pronouncement of judgment, withdraw its approval in the light of further consideration of the matter, and (3) in such case, the defendant shall be permitted to withdraw his plea if he desires to do so. The court shall also cause an inquiry to be made of the defendant to satisfy itself that the plea is freely and voluntarily made, and that there is a factual basis for such plea.

"If such plea is not accepted by the prosecuting attorney and approved by the court, the plea shall be deemed withdrawn and the defendant may then enter such plea or pleas as would otherwise have been available.

"If such plea is withdrawn or deemed withdrawn, it may not be received in evidence in any criminal, civil, or special action or proceeding of any nature, including proceedings before agencies, commissions, boards, and tribunals." (See also §§ 1192, and 1192.2 providing that the plea may specify the degree of the crime.)

that counsel's duty of investigation and research on behalf of a criminal defendant includes the duty to investigate and pursue possible dispositions by way of plea. As the United States Supreme Court has recognized, pursuing a favorable plea bargain may be a wiser course than pursuing legal impediments to prosecution. "[R]epresentation frequently involves highly practical considerations as well as specialized knowledge of the law. Often the interests of the accused are not advanced by challenges that would only delay the inevitable date of prosecution [citation], or by contesting all guilt [citation]. A prospect of plea bargaining, the expectation or hope of a lesser sentence, or the convincing nature of the evidence against the accused are considerations that might well suggest the advisability of a guilty plea . . . ." (*Tollett* v. *Henderson* (1973) 411 U.S. 258, 268 [36 L.Ed.2d 235, 244, 93 S.Ct. 1602]; see also *United States* ex rel. *Caruso* v. *Zelinsky* (3d Cir. 1982) 689 F.2d 435, 438; *Hawkman* v. *Parratt* (8th Cir. 1981) 661 F.2d 1161, 1170-1171.)

Counsel's obligation to explore possible disposition by plea bargain is also expressed in the American Bar Association standards.[13] "A lawyer may engage in plea discussions with the prosecutor, although ordinarily the client's consent to engage in such discussions should be obtained in advance. Under no circumstances should a lawyer recommend to a defendant acceptance of a plea unless a full investigation and study of the case has been completed, including an analysis of controlling law and the evidence likely to be introduced at trial." (Std. 4-6-1(b).) The commentary to the standard notes that, "Since disposition by plea is mutually advantageous in many circumstances, plea discussions are a significant part of the duty of defense counsel." (*Id.*, std. 4-6.1, p. 4-72.) Moreover, "Plea discussions should be considered the norm and failure to seek such discussion an exception unless defense counsel concludes that sound reasons exist for not doing so." (*Ibid.*)

The nature and extent of the duty imposed on counsel will, of course, vary with the facts and circumstances of each case. At a minimum, however, we conclude that the duty includes the obligation to initiate plea negotiations where the facts and circumstances of the offense and its proof, as well as an assessment of available factual and legal defenses, would lead a reasonably competent counsel to believe that there is a reasonable possibility of a result favorable to the accused through the process of plea negotia-

---

[13]The American Bar Association standards (ABA Standards for Crim. Justice, The Defense Function, std. 4-6.1.) are often relied on by courts in determining and defining the duties and responsibilities of counsel. (See. e.g., *People* v. *Pope, supra,* 23 Cal.3d at pp. 424-425.)

tions.[14] (See e.g., *United States* ex rel. *Caruso* v. *Zelinsky, supra,* 689 F.2d 435.) Where counsel has initiated plea negotiations, the duty requires that the negotiations be pursued to conclusion, whether or not a bargain is ultimately struck.[15] ■ It is this latter duty that is at issue here. As we discuss below, counsel did not competently complete the negotiations on defendants behalf when he failed, without justification, to take any steps to correct the pre-plea report. There remains, however, the question whether such failure is reversible error.

■ In *People* v. *Pope, supra,* the Supreme Court held that counsel's failings compel reversal if they result in the "withdrawal of a potentially meritorious defense." (23 Cal.3d at p. 425.) In *People* v. *Fosselman* (1983) 33 Cal.3d 572 [189 Cal.Rptr. 855, 659 P.2d 1144], the court recognized that strict application of the *Pope* standard of harmful error may not encompass claims of ineffectiveness where the failings of counsel otherwise prejudiced the defendant. The court concluded, "that in cases in which a claim of ineffective assistance of counsel is based on acts or omissions not amount-

---

[14]In *Cole* v. *Slayton* (W.D. Va. 1974) 378 F.Supp. 364, the district court held the duty to apply even where the evidence against the accused is very strong, "One of the more obvious deficiencies in this case was the failure to attempt to plea bargain; the explanation given being that counsel had nothing to bargain with. This explanation ignores the fact that all defendants, no matter how overwhelming their guilt, have one bargaining point—the plea itself. Whether a prosecutor will agree to accept a plea of guilty in return for a reduced charge or recommended sentence will, of course, depend upon any of a number of factors, but the point is that this possibility should have been attempted." (*Id.,* at p. 368.)

[15]The American Bar Association standards outline the extent of the duty in several related sections. Most pertinent are the following: "Standard 4-5.1. Advising the defendant [¶] (a) After informing himself or herself fully on the facts and the law, the lawyer should advise the accused with complete candor concerning all aspects of the case, including a candid estimate of the probable outcome. [¶] (b) It is unprofessional conduct for the lawyer intentionally to understate or overstate the risks, hazards, or prospects of the case to exert undue influence on the accused's decision as to his or her plea. [¶] (c) The lawyer should caution the client to avoid communication about the case with witnesses, except with the approval of the lawyer, to avoid any contact with jurors or prospective jurors, and to avoid either the reality or the appearance of any other improper activity.

"Standard 4-6.1. Duty to explore disposition without trial [¶] (a) Whenever the nature and circumstances of the case permit, the lawyer for the accused should explore the possibility of an early diversion of the case from the criminal process through the use of other community agencies. [¶] (b) A lawyer may engage in plea discussions with the prosecutor, although ordinarily the client's consent to engage in such discussions should be obtained in advance. Under no circumstances should a lawyer recommend to a defendant acceptance of a plea unless a full investigation and study of the case has been completed, including an analysis of controlling law and the evidence likely to be introduced at trial.

"Standard 4-6.2. Conduct of discussions [¶] (a) In conducting discussions with the prosecutor the lawyer should keep the accused advised of developments at all times and all proposals made by the prosecutor should be communicated promptly to the accused. [¶] (b) It is unprofessional conduct for a lawyer knowingly to make false statements concerning the evidence in the course of plea discussions with the prosecutor. [¶] (c) It is unprofessional conduct for a lawyer to seek or accept concessions favorable to one client by any agreement which is detrimental to the legitimate interests of any other client."

ing to withdrawal of a defense, a defendant may prove such ineffectiveness if he establishes that his counsel failed to perform with reasonable competence and that it is reasonably probable a determination more favorable to the defendant would have resulted in the absence of counsel's failings. [Citations.]" (*Fosselman, supra,* at p. 584.)

■ Defendant argues that the problem here is one akin to "withdrawal of potentially meritorious defense" and that, accordingly, he need not show the reasonable probability of a more favorable result from the trial in order to perfect his claim of ineffective assistance. The People contend the test articulated in *Fosselman* should be applied. Thus, they argue, any failing of defense counsel does not compel reversal, because the absence of specific agreement to the sought-after plea by the prosecution, and the inability to determine whether the court would have accepted the tendered plea, compel the conclusion that it is not reasonably probable a more favorable result would have been obtained in the absence of counsel's failings.

The problem posed by ineffectiveness of counsel at the pleading stage does not fit neatly into either the *Pope* or *Fosselman* error categories. On the one hand, decisions about whether to plead guilty or whether to seek a plea bargain do not always involve the withdrawal of a potentially meritorious defense such as in *Williams* or *Stanworth*. For example, the decision of whether to accept or enter into a plea bargain may involve different, but equally delicate, considerations of the strength of the evidence or the impact of a trial on the final sentencing decision of the judge.[16] So too, even the "expanded" view of error permitted in *Fosselman* may miss significant failings of counsel at the pleading stage. Because the question of whether a bargain between prosecutor and defense will actually be struck and, if struck, accepted by the court, is always conjectural, it is practically impossible to establish prejudice under the expanded *Fosselman* standard of error focused on the ultimate result of the case.[17]

---

[16]Factors developed during evidence at trial, for example, may warrant an increase of punishment from that promised in a proferred pretrial plea arrangement. (*In re Lewallen* (1979) 23 Cal.3d 274 [152 Cal.Rptr. 528, 590 P.2d 383, 100 A.L.R.3d 823]; *In re Perez* (1978) 84 Cal.App.3d 168 [148 Cal.Rptr. 302].)

[17]The typical "charge bargain" involves amendment of the pleadings or dismissal of certain charges. Accordingly, even after the prosecution and defense reach agreement, the "bargain" cannot be consummated without the exercise of judicial discretion. In the case of dismissals, the court must exercise discretion under Penal Code section 1385 and must have appropriate, specified reasons for the dismissal. (*People* v. *Levins* (1978) 22 Cal.3d 620, 624 [150 Cal.Rptr. 458]; *People* v. *Hunt* (1977) 19 Cal.3d 888, 897 [140 Cal.Rptr. 651, 568 P.2d 376]; *People* v. *Superior Court* (1968) 69 Cal.2d 491 [72 Cal.Rptr. 330, 446 P.2d 138].)

Where the plea specifies the punishment to be imposed, a "conditional plea" under Penal Code section 1192.5, the bargaining is between prosecutor and defense counsel, but the court retains discretion to accept or reject the tendered plea. (*People* v. *Anderson* (1982)

We recently recognized this difficulty in a case dealing with a claim of ineffective assistance at the time of entry of plea of guilty. We noted, that "neither [the *Pope* nor *Fosselman* standards] fits squarely within the present case, for those cases resulted from trials, where it is possible to examine the record and ascertain whether counsel's failings had a prejudicial effect on the fact-finding process. In this case, defendant's guilt was determined by his own pleas, and whether he would have pled differently in the absence of counsel's failings is more difficult to ascertain. [¶] However, the standards expressed in *Pope* and *Fosselman* are not exhaustive. As the court in *Fosselman* points out, the basic inquiry in all cases is whether defendant was prejudiced by the conduct of his attorney. [Citation.]" *People* v. *McCary* (1985) 166 Cal.App.3d 1, 10 [212 Cal.Rptr. 114].)[18]

Our reference in *McCary* to *Fosselman's* discussion of prejudice is to the Supreme Court's recognition that not all failings of counsel result in the withdrawal of critical defense. Thus, the Supreme Court cited with approval decisions of the Courts of Appeal which "hold that a defendant may satisfy the second prong of the *Pope* test by showing simply that he was *prejudiced* by his attorney's inadequate performance." (*Fosselman, supra,* 33 Cal.3d at p. 584, italics in original.)[19]

■   Since it is always impossible to know whether counsel's efforts at securing a plea bargain for the client would ultimately result in the accepted plea, the proper focus of our inquiry is whether counsel's failings resulted in withdrawal of the opportunity for the defendant to present a plea bargain to the court for consideration.

Thus viewed, the error is, to a degree, like the withdrawal of a potentially meritorious defense. In such circumstances, it is not necessary that the defense be one which "would result inexorably [or probably] in a defendant's

---

129 Cal.App.3d 491 [181 Cal.Rptr. 68].) Only where a plea is tendered to all charged counts and the court announces an "indicated sentence" premised upon the plea, thus not implicating the exclusive power of the executive as to the charging of crimes, does the defendant avoid the necessity of the prosecutor's approval of the "bargain." The court still may accept or reject the plea. (*People* v. *Superior Court (Felmann)* (1976) 59 Cal.App.3d 270 [130 Cal.Rptr. 548].)

[18]We went on to conclude in *McCary* that counsel's failure to adequately advise a defendant concerning applicability of a punishment enhancement was reversible error because it fairly appeared that counsel's omission resulted in the plea being made under the influence of mistake or ignorance sufficient to warrant withdrawal of the plea upon motion. (*McCary, supra,* at pp. 10-11.)

[19]In *Fosselman,* the court adopted the "usual" harmless error test of article VI, section 13 of the California Constitution defined in *People* v. *Watson* (1956) 46 Cal.2d 818 [299 P.2d 243], as requiring reversal only where "it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*Id.,* at p. 836.)

acquittal." (*People* v. *Rodriguez* (1977) 73 Cal.App.3d 1023, 1028 [141 Cal.Rptr. 118], as quoted in *People* v. *Pope, supra,* 23 Cal.3d at p. 425, fn. 15.) The error occurs because the "defendant is deprived of the opportunity to *adjudicate* a defense which may succeed." (*People* v. *Farley* (1979) 90 Cal.App.3d 851, 865 [153 Cal.Rptr. 695, 12 A.L.R.4th 301], cited with approval in *People* v. *Shaw* (1984) 35 Cal.3d 535, 541 [198 Cal.Rptr. 788, 674 P.2d 759].)

The circumstance is also analogous to cases where error is predicated on a claim that the court improperly failed to exercise its discretion and the impact of the error cannot easily be assessed. In such circumstances, as here, the usual harmless error test cannot be applied because it is impossible to determine what the actual result of the exercise of discretion would have been. In many such cases, the failure to exercise decretion is, itself, reversible error. (*People* v. *Bigelow* (1984) 37 Cal.3d 731, 744-745 [209 Cal.Rptr. 328, 691 P.2d 994], failure to exercise discretion in appointing advisory counsel; *People* v. *Massie* (1967) 66 Cal.2d 899, 917-918 [59 Cal.Rptr. 733, 428 P.2d 869], failure to exercise discretion to grant separate trials; *People* v. *United Bonding Ins. Co.* (1966) 240 Cal.App.2d 895 [50 Cal.Rptr. 198], failure to exercise discretion to vacate bond forfeiture.)

Similar considerations governed the holding in *People* v. *Hill* (1974) 12 Cal.3d 731 [117 Cal.Rptr. 393, 528 P.2d 1], where the Supreme Court held the ordinary harmless error test was inapplicable to appellate review under subdivision (m) of section 1538.5 of the denial of a motion to suppress evidence following a plea of guilty. "The harmless error concept as a basis for according relief in such a setting is clearly inappropriate. There simply is no intelligent means of assessing the impact of a particular erroneous refusal to suppress evidence. Unlike the ordinary post-trial appeal, there is nothing at all in the record to indicate what evidence or defenses the defendant is capable of producing on his own behalf. The strategic considerations which lead an accused to plead guilty pursuant to a plea bargain will frequently hinge not only on the quantum and quality of the prosecution's evidence, but also on the probable effectiveness of the defenses and evidence which the defendant has to counterbalance the incriminating evidence. After the exclusion of certain items of evidence, the prosecution's case may continue to appear invulnerable to an appellate court which necessarily can look only to the strength of competent evidence indicative of the accused's guilt. However, the defendant may have or believe he has means of impeaching, discrediting or casting doubt on such evidence, and the items excluded on appeal might be the very ones which posed the most difficult strategic problems for the defendant. Only the accused and his counsel are aware of what favorable evidence is available to them. We cannot, with any assurance, conclude that an appellate court, which does not have the benefit of that

knowledge, can consistently arrive at an accurate assessment of whether the defendant would again plead guilty after knowledge that some but not all of the challenged evidence is to be suppressed. To the contrary, an unacceptable degree of appellate speculation would necessarily inject itself into the application of the harmless error concept in such a context." (Fn. omitted.) (*Hill, supra,* at p. 768.)

Just as a plea of guilty did not insulate error from appellate review in the circumstances presented in *Hill,* in *People* v. *Smith* (1971) 22 Cal.App.3d 25 [99 Cal.Rptr. 171], we found on facts similar to those here, that an intervening conviction by jury trial did not render the error harmless.

In *Smith,* an agreement was reached between defendant and the People for defendant to enter a plea of guilty to the single charge against him, receiving stolen property (§ 496), on the condition that he be granted probation and ordered to spend one year in the county jail. The plea was tendered to the court but the court refused to consider acceptance of the plea as required by section 1192.5. Defendant was subsequently convicted of the offense after jury trial. We found the trial error free, but reversed the judgment. We held that the court may accept or reject the plea, but "may not arbitrarily refuse to consider the offer. The failure of the court to consider the conditional plea and exercise its discretion in this case was error." (*Id.,* at pp. 30-31.)

The problem of error presented by counsel's failure to explore a potential plea bargain diligently is much the same as that we faced in *Smith.* In each case, the necessary prejudice stems from the deprivation of the opportunity for the court to exercise its discretion to accept or reject a beneficial disposition by plea.

With these considerations in mind, we believe an appropriate test of prejudice in cases where it is claimed that counsel has inadequately pursued or perfected plea negotiations is to determine whether, absent counsel's failings, it is reasonably probable defendant would have had the opportunity to present a beneficial plea bargain to the court for its approval or rejection.

Under this test, it is defendant's burden to establish that counsel's acts or omissions fell below the standard of reasonable diligence and that, absent such failing, it is reasonably probable a bargain subject to the court's discretion, and which defendant was prepared to accept, would have been

available for submission to the court.[20] Defendant must also establish that the terms of the plea bargain are favorable when compared to the actual result of the proceedings.[21]

■ We emphasize that this test may not be applicable in all cases of claimed inadequacy of counsel concerning plea bargaining. Thus, for example, claimed inadequacy on the basis of failure to communicate a bargain would require proof that a specific offer was, in fact made. (See, e.g., *Young* v. *State, supra,* 470 N.E.2d 70.) In the circumstances presented here, the test allows fair consideration of possible prejudice to the accused while still requiring that the ineffectiveness be established as " 'a demonstrable reality and not a speculative matter.' " (*People* v. *Stephenson* (1974) 10 Cal.3d 652, 661 [111 Cal.Rptr. 556, 517 P.2d 820]; *People* v. *Pope, supra,* 23 Cal.3d at p. 426, fn. 16.)[22]

Applying this test to the instant case, we conclude that, while counsel did not act in a manner to be expected of reasonably diligent counsel under the

---

[20]This approach appears to be that taken by the court in *Caruso* v. *Zelinsky, supra,* 689 F.2d 435. There, the court noted, "Caruso alleges the requisite prejudice, a significant additional term of imprisonment that resulted from counsel's failure to communicate the plea offer which he would have accepted. [¶] The State argues that because Caruso received a fair trial he is not entitled to a habeas remedy even if he could prove ineffective assistance of counsel in the manner alleged. This argument is untenable on the plea bargaining issue. Failure by defense counsel to communicate a plea offer to defendant deprives defendant of the opportunity to present a plea bargain for the consideration of the State judge and, on acceptance by the State judge, to enter a guilty plea in exchange for a lesser sentence. A subsequent fair trial does not remedy this deprivation. [Citations.]" (689 F.2d at p. 438.)

[21]Where comparison of the punishment is at issue, the inquiry should probably be a comparison of the theoretical maximum initial and potential sentences under the proposed plea scheme compared to the theoretical maximum for the charges of which defendant was actually convicted. Comparison of the imposed punishment and the lesser maximum under a lost plea bargain supplied the necessary "prejudice" in *Lyles* v. *State* (1978) 178 Ind.App. 398 [382 N.E.2d 991], where the court reversed a robbery conviction after jury trial because defendants counsel failed to communicate a beneficial plea bargain to defendant. A similar approach was taken in *Young* v. *State* (1984) — Ind. — [470 N.E.2d 70].

[22]The ultimate uncertainty of whether a plea bargain will be consummated always remains. The uncertainty, however, cannot be allowed to shield substantial prejudice due to ineffective counsel from review and correction. "We recognize that appellant might have rejected the plea bargain offer because it would have meant 'state time.' We also recognize that we cannot be sure that the trial court, which after trial imposed very heavy sentences, would have accepted the plea bargain. These uncertainties, however, in no way affect the fact that counsel, for no good reason, failed to take action that arguably might have furthered appellant's interests. In other words: It cannot be denied that upon proper advice, appellate might have accepted the offered plea bargain; nor that, while a court may reject a plea bargain, as a practical matter—especially in crowded urban courts,—this rarely occurs." (*Com.* v. *Napper* (1978) 254 Pa.Super. 54 [385 A.2d 521, 524, 10 A.L.R.4th 1].)

circumstances, defendant has not established that counsel's failing deprived him of a bargain properly subject to acceptance or rejection by the court.[23]

The failure to take any steps whatsoever to correct the preplea report constituted a failure to act with reasonable diligence. Defendant was charged with numerous serious offenses. Conviction of any one of the offences would have rendered defendant ineligible for probation and subject to a significant prison term.[24] The opportunity to strike a bargain for a plea to § 243.4, with a maximum punishment of four years *and* the opportunity for probation was clearly in defendant's best interest. Defendant had a realistic possibility of striking the bargain he sought. Indeed, the prosecutor had already offered a substantial reduction of the charges and only the question of a grant of probation remained for further exploration. As to that, the district attorney was willing, in essence, to accept the probation department's recommendation. Under those circumstances, counsel had a clear duty to insure that the information used to complete the preplea report was thorough and accurate. On receipt of the erroneous report, that duty compelled the taking of corrective action. The only possible justification for not pursuing the correction is Asakawa's belief that he could get the offer he wanted anyhow. Because the People's position had, at best, been a willingness to submit on a favorable preplea report, the report was a critical and essential link in counsel's pursuit of his client's interests. The failure to pursue correction fell below the standard of competence; the People concede as much.

However, even had counsel obtained a proper report, and even had that report recommended probation, defendant would still not have been in the position he sought.

The plea which defendant sought was a plea to section 243.4 with a promise that he would not be sentenced to state prison at the outset. Such a plea was subject to the approval of the court pursuant to Penal Code section 1192.5. Moreover, because the sought-after plea involved the dismissal of pending charges and a sentence specification, the approval of the district attorney was necessary before the court could consider accepting or rejecting the plea and sentence limitation pursuant to section 1192.5. (*People* v.

---

[23]Unlike the situation faced by the court in *Pope*, we are presented with a complete record of the circumstances surrounding the claim of ineffective assistance of counsel here. This because a motion for new trial was held based upon a claim of ineffectiveness of counsel under the procedural rule articulated by the Supreme Court in *Fosselman*. We are thus in a position to assess the nature of the claimed omissions, the presence or absence of tactical reasons for them and the potential prejudice.

[24]The upper term of the rape, and oral copulation charges was eight years and for the burglary, six years. The section 12022.3 enhancement added a possible three years to any of the sex offense sentences.

*Superior Court (Felmann), supra,* 59 Cal.App.3d 270.) The facts demonstrate that the district attorney never offered to *agree* to a condition limiting the initial sentence to probation with a year in county jail. To the contrary, the prosecutor's best offer was to submit the decision of whether to grant probation or not to the court without taking a position. Under those circumstances, the court could not have accepted the sentence limitation sought by defendant (*People* v. *Superior Court (Felmann), supra,* 59 Cal.App.3d 270). Had defendant tendered a plea based on the prosecutor's best offer, the court could have sentenced defendant to prison despite counsel's efforts, a risk which the record reveals he was not prepared to take. Though a number of factors in the case presented strong arguments favoring a grant of probation, the fact that the district attorney at best agreed to remain silent in case of a possible probation recommendation and, at times, took a posture favoring a prison sentence, leads us to conclude that it is not reasonably probable that, absent counsel's failings, the beneficial plea which defendant was prepared to make, conditioned on no initial state prison, would have been available for submission to the court. Accordingly, defendant has failed to establish the prejudice necessary to require a reversal of his conviction.[25]

The judgment is affirmed.

Carr, J., and Evans, Acting P. J., concurred.

On March 13, 1986, the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied May 29, 1986.

---

[25]In cases like this, even appellate success is elusive because reversal on appeal gives ". . . only imperfect relief. We cannot compel the [prosecution] to reinstate its plea bargain offer; nor can we dictate what sentence may be imposed if appellant pleads guilty without so advantageous an offer as he had before, or if he goes to trial and is again convicted." (*Com.* v. *Napper, supra,* 385 A.2d at p. 524.)