[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This habeas action was commenced by a petition dated January 26, 1996, through which the petitioner, Philip Wieler, asserts that his current confinement to the custody of the Commissioner of Corrections is illegal on the basis of his claim that he was rendered the ineffective assistance of counsel by his criminal trial counsel. Specifically, the petitioner alleges that his trial counsel was deficient for failing to understand the essential elements of the criminal offense of embezzlement, for failing to advise the petitioner that he had no factual or legal defenses to the charges against him, for failing to engage in pre-conviction plea bargaining as intensively as possible, and for failing to adequately advise the petitioner to accept the plea offer made to him prior to his conviction. As a consequence, the petitioner claims, he received a substantially longer sentence after trial than he would have received pursuant to the CT Page 5578-HHHH pre-trial plea agreement offered to him. Finally, the petitioner claims that trial counsel failed to file within thirty days of his date of sentencing an application for review of his sentence by the Sentence Review Division of the Superior Court and failed to instruct the petitioner to do so himself.
On June 5, 1996, the court conducted an evidentiary hearing on this petition during which the court heard oral testimony, and documents, including the trial transcript, were admitted into evidence. Based on the evidence adduced at the hearing, the court makes the following findings and order.
In the underlying criminal prosecution, the petitioner was charged in two files in the Superior Court for the Judicial District of New Haven. These files were-consolidated for trial. In one file bearing Docket Number CR6-321015, he was charged with two counts of Larceny in the First Degree in violation of Connecticut General Statutes § 53a-122 (a)(2). Respondent's Exhibit C, Information dated February 6, 1990. In a second file, CR 91-338862, he was charged with twenty-three counts of Larceny in the First Degree in violation of C.G.S. § 53a-122 (a)(2). Respondent's Exhibit A, Information dated February 3, 1992. While each of the counts of these informations recited a different transaction, the j essence of the State's claims, in all counts, was that the petitioner, individually and as President of NW Group, Inc, a real estate management corporation, did with intent to deprive owners of their money, embezzle said money by ". . . wrongfully taking, withholding and appropriating to himself said money . . ." Id. The aggregate amount the State alleged in this second file that the petitioner had embezzled was approximately one million, eight hundred and twenty-six thousand, nine hundred and ninety ($1,826,990.00) dollars. Id. Subsequently, at the end of the State's evidence during trial, the Assistant State's Attorney filed a different Long Form Information against the petitioner in Docket CR 91-338862, dated March 3, 1992, charging him in twenty one counts with Larceny in the First Degree by embezzlement in violation of C.G.S. §53a-122 (a)(2), and in two counts with Larceny in the Second Degree by embezzlement in violation of C.G.S. § 53a-123
(a)(2). Respondent's Exhibit B, Long Form Information dated March 3, 1992. This information differed from the original information filed by Attorney Sullivan in that it charged the petitioner with one less count of Larceny in the First Degree and one more count of larceny in the Second Degree. Additionally, each count no longer contained a recitation of a specified amount of money the CT Page 5578-IIII petitioner was alleged to have embezzled. Finally, while the factual allegation of each count in the initial twenty three count information set forth the claim that the petitioner had embezzled funds by "wrongfully taking, withholding and appropriating," the replacement information alleged only that the petitioner had committed Larceny by Embezzlement and that he had "appropriated" money to himself.
Following a jury trial in which the petitioner was convicted of twenty two counts of Larceny in the First Degree and two counts of Larceny in the Second Degree, he was sentenced by the court, Hadden, J., to a total effective term of fifteen years imprisonment, suspended after ten years confinement, followed by five years of probation. The petitioner is currently an inmate in the custody of the Commissioner of Corrections serving the sentence imposed on him by the court.
The petitioner's conviction was affirmed on direct appeal by both the Appellate Court and the Supreme Court. State v.Wieler, 35 Conn. App. 566 (1994), aff'd 233 Conn. 552 (1995). Central to the petitioner's claim on appeal was his contention that the trial court had erroneously refused to instruct the jury that an intent to deprive the victims of their funds was an essential element of the offense of larceny by embezzlement as charged in this case. Both the Appellate Court and Supreme Court agreed with the trial court's ruling precluding testimony of such intent as irrelevant and in refusing to give the jury instructions on intent as requested by the petitioner.
In the underlying criminal process, the State was represented by Assistant State's Attorney Michael J. Sullivan. The petitioner was represented before the Superior Court, and on appeal, by Attorney Ira Grudberg of the New Haven Bar.
In order for the petitioner to succeed in his claim that he was denied the effective assistance of counsel in the criminal proceedings, he has the burden of proving both that his trial counsel's performance was deficient and that he was actually prejudiced by his counsel's deficient performance. Strickland v.Washington, 466 U.S. 668 (1984), Bunkley v. Commissioner,222 Conn. 444 (1992), Copas v. Commissioner, 234 Conn. 139 (1995). The petitioner's right to the effective assistance of counsel is assured by the Sixth and Fourteenth Amendments to the Federal constitution and by Article First, Section 8 of the Connecticut constitution. In order to prove that his counsel's performance CT Page 5578-JJJJ was deficient, the petitioner must demonstrate that trial counsel's representation fell below an objective standard of reasonableness. Aillon v. Meachum, 211 Conn. 352 (1989).
Competent representation is not to be equated with perfection. "The constitution guarantees only a fair trial and a competent attorney; it does not ensure that every conceivable constitutional claim will be recognized and raised." Jeffrey v.Commissioner, 36 Conn. App. 216 (1994) (citations omitted). "Defense counsel's performance must be reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law." (Citations omitted; internal quotations marks omitted.) Johnson v. Commissioner,36 Conn. App. 695 (1995).
The Strickland court also gave guidance to the trial bench for its assessment of ineffective assistance claims. The Supreme Court opined: "[J]udicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy'. . . [C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." (Citations omitted.) Strickland v.Washington, supra, 466 U.S. 689-90; Ouintana v. Warden, 220 Conn. 1
(1991); Williams v. Warden, 217 Conn. 419 (1991); Jeffrey v.Commissioner, 36 Conn. App. 216 (1994).
With respect to the prejudice component of the Strickland
test, the petitioner must demonstrate that, ". . . counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland v.Washington, supra 466 U.S. 687. Thus, "An error by counsel, even CT Page 5578-KKKK if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Id., 691. "It is not enough for the [petitioner] to show that the errors had some conceivable effect on the outcome of the proceedings." Id., 693. Rather, a successful petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Copas v.Commissioner, 234 Conn. 139 (1995). "A reasonable probability is a probability sufficient to undermine confidence in the outcome."Strickland v. Washington, supra 466 U.S. 694. "`When a [petitioner] challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.'"Fair v. Warden, 211 Conn. 398, 408 (1989); Jeffrey v.Commissioner, 36 Conn. App. 216 (1994).
In this case, the petitioner acknowledges that he received a fair trial. cf. Petitioner's Post Trial Brief, (unnumbered) p. 15. The nub of his claim is that he received ineffective assistance from counsel in conjunction with his decision to plead not guilty, and to proceed to trial.
The evidence belies the petitioner's assertion that his counsel failed to actively pursue plea negotiations on his behalf.
Attorney Grudberg and Assistant State's Attorney Sullivan both testified at the habeas hearing. Attorney Grudberg was first retained by the petitioner in 1989 before any criminal charges were filed. The petitioner was initially charged in a two count information filed in the New Haven Judicial District in which he was charged with Larceny in the First Degree in violation of C.G.S. 53a-122 (a)(2). This information, bearing Docket Number CR6-321015, more specifically alleged that the petitioner had committed Larceny in the First Degree by wrongfully taking, obtaining or withholding property of a specified victim with the intent to deprive that victim of the funds. Respondent's Exhibit C, Two Count Information dated February 6, 1990. While Attorney Grudberg initially appeared in court for the petitioner in this matter, and he participated in numerous pre-trial discussions with counsel and the court, once he became aware that the Economic Crime Unit of the Chief State's Attorney's Office was preparing to file additional charges against the petitioner, he informed the court of his belief that there was no practical CT Page 5578-LLLL purpose in discussing a plea agreement in the pending New Haven file since the filing of additional charges would have a substantial impact on the parameters of any settlement discussions.
Attorney Sullivan was in charge of the Economic Crime Unit in the Office of the Chief State's Attorney from 1989 until 1995. During this time period he became involved in the investigation of Mr. Wieler's activities. Ultimately, he assigned the prosecution of the matter to himself. When he became involved in this matter, Attorney Sullivan was aware that Mr. Wieler had first been charged in a matter arising from the New Haven Judicial District in a two count information charging him with Larceny in the First Degree in violation of C.G.S. § 53a-122
(a)(2). Once charges, originating from the Economic Crime Unit were filed, Attorney Sullivan took over the handling of the New Haven file as well as the charges investigated by the Economic Crime Unit.
During plea negotiations, Attorney Sullivan indicated to Attorney Grudberg that he would be willing to accept a plea disposition calling for a total effective sentence of twenty years suspended after ten years of confinement. Subsequent to this initial offer, both counsel met with Judge Richard Stanley who, during a judicial pre-trial, indicated a probable sentence of twenty years suspended after serving five and one half years of confinement in return for guilty pleas from the petitioner. After this settlement conference, while Attorneys Sullivan and Grudberg met on a number of occasions, no further offers were made.
With the court's permission, immediately prior to the commencement of the trial, and at the request of Attorney Grudberg, he and Attorney Sullivan met for another judicial pre-trial with Judge Thomas Corradino, who had taken over the criminal assignment from Judge Stanley. Attorney Grudberg testified at the habeas hearing that he was unsuccessful in his efforts to obtain a more favorable judicially-indicated sentence from Judge Corradino than had been indicated by Judge Stanley.
The court is satisfied from the evidence that Attorney Grudberg attempted to achieve an outcome acceptable to the petitioner through plea negotiations and that he vigorously pursued the petitioner's interests in the conduct of plea negotiations. The court finds, also, that Attorney Grudberg kept CT Page 5578-MMMM the petitioner informed of the status of any settlement discussions.
Attorney Grudberg also provided reasonable advice to the petitioner concerning plea negotiations. He met with the petitioner following the pretrial with Judge Stanley, and he recommended to the petitioner that he accept the court-indicated sentence of a term of twenty years imprisonment suspended after confinement of five and one half years. The petitioner rejected this court indicated sentence.
Contrary to assertions by the petitioner, the court finds that Attorney Grudberg adequately informed the petitioner of his assessment of the strength of the State's case. Attorney Grudberg testified, and the court finds, that he discussed with the petitioner the pros and cons of going to trial or accepting the court-indicated sentence in return for guilty pleas, and he informed the petitioner, during pretrial discussions, that it was very likely he would be convicted if he decided to go to trial.
The petitioner alleges that he rejected the terms of this court-indicated sentence because of his reliance on Attorney Grudberg's assurances that the State would have to prove that he intended to permanently deprive his victims of the funds he took as an essential element of the case against him. Since the petitioner claimed that he intended to repay those whose funds he had taken, he believed that the State would not be able to establish beyond a reasonable doubt that he intended to permanently deprive them of their funds.
As a general proposition of law, a criminal defense counsel has an obligation to a client to give him competent advice concerning whether to accept a plea offer or to go to trial, and within the concept of competence is contained the notion that counsel must have conducted a reasonable investigation of the facts and be apprised of the relevant law. cf. 8 American Law Reports 4th 660, "Assistance of Counsel-Plea Bargaining" and cases cited therein. Additionally, the court notes that a criminal defendant's constitutionally-protected right to the effective assistance of counsel attaches at the plea bargaining stage. "The pleading and plea bargaining stages of a criminal proceeding are critical stages in the criminal process at which a defendant is entitled to the effective assistance of counsel guaranteed by the sixth amendment. (Internal citations omitted)Johnson v. Commissioner, 36 Conn. App. 695 (1995). cf. also, CT Page 5578-NNNNCopas v. Commissioner, 234 Conn. 139 (1995). The decision to reject a plea bargain offer and plead not guilty is also a vitally important decision and a critical stage at which the right to effective counsel attaches." U.S. ex rel. Caruso v.Zelinsky, 689 F.2d 435, 438 (3rd Cir. 1982). Thus, in determining whether or not to plead guilty, a defendant should be made aware of the relevant circumstances and likely consequences so that he can make an intelligent choice. Teague v. Scott, 60 F.3d 1167
(5th Cir. 1995). In Teague, the court found ineffective counsel's failure to inform the defendant of the maximum sentence to which he was exposed at trial. Id., at 1171. And in Caruso,
counsel failed to communicate the government's offer to the defendant. cf. U.S. ex rel. Caruso v. Zelinsky, supra, 689 F.2d 438.
More apropos to the petitioner's assertions a Federal Appeals Court has held that a defendant, after rejecting a proposed plea bargain and receiving a fair trial, may still show prejudice if the plea bargain would have resulted in a lesser sentence. Engelen v. United States, 68 F.3d 238 (8th Cir. 1995). But, stated the Engelin court, a habeas petitioner must show that but for counsel's advice he would have accepted the plea bargain. Id. at 241.
The petitioner claims that, in declining to accept the court indicated sentence, he detrimentally relied on Attorney Grudberg's mistaken belief that an intent to permanently deprive a victim of his taken property was an essential element of the offense of larceny by embezzlement. The court is not persuaded.
The court finds that Attorney Grudberg did, indeed, hold to the belief that an essential element of the criminal offense of larceny by embezzlement was proof that the perpetrator took another's property with the intent to permanently deprive the person of it. The court also finds that Attorney Grudberg's view of the law at that time was neither untutored nor clearly erroneous. While prior to 1992 no appellate court in Connecticut had provided a judicial gloss as to whether the definition of the term "appropriate" as stated in C.G.S. § 53a-119 (1), the definitional section of the offense of larceny by embezzlement, incorporated the intent to permanently deprive as an essential element, prior decisional law had posited this element as within the more general definition of larceny. Thus, several months prior to Connecticut's adoption of the Penal Code, the Connecticut Supreme Court, in State v. Raffone stated: "Proof of CT Page 5578-OOOO larceny requires proof of a taking of property with the intent to deprive the owner of possession permanently." 161 Conn. 117, 128
(1971). Several years after Connecticut's adoption of the Penal Code, the Supreme Court re-affirmed its view that proof of larceny requires proof of a taking of property with the intent to deprive the owner of possession permanently. State v. Kurvin,186 Conn. 555, 557 (1982). Since larceny by embezzlement is a form of larceny, it was not unreasonable for Attorney Grudberg, in the absence of a judicial gloss on the Penal Code definition of embezzlement, to have believed that a court would have applied its earlier reasoning concerning the general definition of larceny to the embezzlement context.
At the habeas hearing, Attorney Arthur Meisler of the Tolland Bar was called as an expert witness by the petitioner. Attorney Meisler, who this court finds to be an experienced and capable criminal defense attorney, testified that, at the time of the petitioner's pending charges, no reasonably competent criminal defense lawyer would have believed that a charge of larceny by embezzlement could be defended by testimony from a defendant of a hope or expectation to pay it back when he could, and that no defense counsel would advise a client that such a case could be defended on the basis that the defendant expected to make repayments in time. While the court finds Attorney Meisler's testimony to be credible, it is of no particular benefit to the petitioner. The court finds no credible evidence that Attorney Grudberg ever predicted to the petitioner that he would be acquitted merely on the basis of his self-serving testimony that he intended, some day, to repay the victims.
In this case, there is no claim that Attorney Grudberg failed to communicate the court-indicated sentence to the petitioner. The petitioner did testify, however, that Attorney Grudberg had discussed a sentencing range with the petitioner as likely parameters for sentencing in the event of a conviction. While there is no evidence before the court that Attorney Grudberg neglected to inform the petitioner of the maximum penalty to which he would be exposed if convicted by a jury, this testimony from the petitioner suggests that counsel did not adequately and accurately inform him of the likely sentencing consequences of guilty verdicts after trial. While the petitioner testified, and Attorney Grudberg agreed, that Attorney Grudberg did discuss the possibility that a sentencing judge might follow federal guidelines for sentencing similar offenses, the petitioner acknowledged that Attorney Grudberg made no guarantees to him CT Page 5578-PPPP concerning any probable sentence upon conviction after trial. Counsel is not a seer. In the absence of any credible testimony that Attorney Grudberg's discussion of a likely sentencing range was not based on historic data, and in the presence of compelling evidence that the petitioner was aware that Attorney Grudberg could make him no promises regarding sentencing, this claim that Attorney Grudberg did not properly advise him of the consequences of conviction after trial is without foundation.
Additionally, this case stands on the unique legal footing that the petitioner rejected Attorney Grudberg's advice that he accept the court-indicated sentence. Thus, the court is not confronted with a petitioner who claims he detrimentally relied on counsel's advice not to plead guilty. The court finds some irony in a habeas claim brought by a petitioner who rejects his counsel's advice to plead guilty, is then found guilty following a fair trial, and who later brings a claim asserting, in essence, that he relied on his counsel's erroneous view of the law in rejecting his counsel's advice.
Additionally, the court does not find that the petitioner has proven by credible evidence that he would have followed his lawyer's advice and entered a guilty plea but for Attorney Grudberg's erroneous view of the law of larceny. While it is clear from a review of the trial transcript as well as his testimony at the habeas hearing that Attorney Grudberg did believe that an intent to permanently deprive the victim of his funds was an essential element of the offense of larceny, and therefore had to be proven by the State, the court finds credible Attorney, Grudberg's assertion that this view did not lead him to the belief that the petitioner would be acquitted. Attorney Grudberg testified, and the court finds, that at the time of the trial he believed that this issue of permanent deprivation would have given the petitioner an opportunity to tell the jury that he had put approximately two hundred fifty thousand ($250,000) dollars of his own funds into his failing business and to assert before the jury that he intended to repay the victims. Since the State was in a strong position to prove that the petitioner had indeed taken substantial funds from associations who had entrusted them in his care, he believed that the issue of a criminal intent to permanently deprive the victims of their funds at least, in his own words, gave him something to talk about with the jury. The court takes Attorney Grudberg's statement in this regard as an assertion that in an otherwise strong case for the prosecution, he at least believed he could put the question of CT Page 5578-QQQQ criminal intent to permanently deprive before the jury as a vehicle to raise reasonable doubt. There is no credible evidence that he ever told the petitioner that this defense would succeed. To the contrary, Attorney Grudberg testified, and the court finds, that he told the petitioner that the State had a strong case and he believed that the likelihood of conviction was great. Indeed, On July 24, 1991, Attorney Grudberg wrote to Attorney Sullivan, in furtherance of plea negotiations; "I would be a fool to think that, notwithstanding the above, acquittals on these cases are very likely." Respondent's Exhibit D. While there is no evidence that a copy of this letter was provided to the petitioner at the time, the letter tends to corroborate Attorney Grudberg's testimony that he did not, at any time, forecast an acquittal in his pretrial discussions with the petitioner.
Finally, in regard to this point, the court is not persuaded that the petitioner would have accepted the court-indicated sentence even if he had known before trial that he would not be able to testify that he intended to repay his victims. As Attorney Grudberg testified at the habeas hearing, intent may be inferred from conduct. The petitioner adduced no credible evidence at the habeas hearing that he had repaid any of the victims any of the funds he had embezzled from them. While his claim that he had put some of his funds into the failing enterprise is some demonstration of his effort to keep the business afloat, it is hardly evidence of repayment to the victims.
The petitioner also alleges that Attorney Grudberg failed to adequately advise him concerning his right to apply to have his sentence reviewed. At the habeas hearing, the petitioner acknowledged that at the time of sentencing he was properly advised concerning his right to a review of his sentence. He claimed, however, that when he discussed it with Attorney Grudberg, counsel informed him that his sentence could either be increased or decreased on review but that he appeared more interested in the appellate issues. While not having a detailed memory of his conversation with the petitioner concerning sentence review, Attorney Grudberg testified that he believed that he told the petitioner that if he wished to apply for sentence review, his application would have to be filed within thirty days. He also recalled telling the petitioner that it was probably a waste of time for the petitioner to file such an application. The petitioner testified that Attorney Grudberg CT Page 5578-RRRR retained the Sentence Review application in his possession. He further testified that he only learned once his conviction had been affirmed on appeal that the time period for applying for sentence review had passed and had not been stayed by the appeal. Attorney Grudberg did not refute the petitioner's testimony concerning sentence review. Thus, it appears to the court that the petitioner was unaware that the time period for filing a sentence review application had not been stayed during his appeals. His failure to pursue this right was not therefore, due to any delay or manipulation of the judicial process on his part.
Faced with a petitioner who has missed the opportunity to apply for sentence review pursuant to the terms of C.G.S. §51-195 through no fault of his own, the habeas court is authorized to provide for restoration of the right. Ostolaza v.Warden, 26 Conn. App. 758 (1992); cf. also Conn. v. Phidd,42 Conn. App. 17 (1996), concerning restoration of the right to appeal. Additionally, the court does not believe that the petitioner must prove, in order to satisfy the Strickland
prejudice prong, that he would have, in fact, filed an application for sentence review, or that such an application would have been successful. Accordingly, the petitioner's right to apply for a review of his sentence is restored to him. The time period in which such application must be filed shall commence on the date of the filing of this Memorandum of Decision.
With the exception of the court's order concerning sentence review, the petition is dismissed.
Bishop, J.